[S. F. Nos. 6263, 6350.  Department One.—April 8, 1914.]

## THE HIBERNIA SAVINGS AND LOAN SOCIETY (a Corporation), Respondent, v. ROBERT E. DICKINSON, Defendant and Appellant; E. A. MONTGOMERY, Defendant and Respondent.

MORTGAGE—ASSUMPTION BY GRANTEE—ACTION OF FORECLOSURE—FAILURE OF ANSWER TO DENY ASSUMPTION.—The failure of the mortgagor in an action of foreclosure against him and a subsequent purchaser of the mortgaged premises to deny the allegation of the complaint that such purchaser agreed to assume and pay the mortgage as a part of the consideration of the deed to him, does not constitute an admission of such assumption so far as concerns the mortgagor and the plaintiff.

ID.—COMPLAINT AGAINST TWO PERSONS—SEPARATE ANSWERS—SCOPE OF DENIALS.—Where a complaint is directed against two persons, and the liability of one involves some facts which are not material to the liability of the other in the cause of action declared upon, and they answer separately, neither is required to answer those allegations which relate solely to the liability of the other.

ID.—AMENDMENT OF COMPLAINT—CONFORMANCE TO PROOF—DISCRETION OF COURT.—The court has discretion in such an action to permit the plaintiff, upon a motion made under sections 663 and 663a of the Code of Civil Procedure, to amend his complaint so as to conform to the proof by omitting the allegation that the purchaser assumed payment of the mortgage debt.

ID.—ASSUMPTION OF MORTGAGE BY GRANTEE—WHEN NOT SHOWN—PRESUMPTION.—A statement in a deed of encumbered land that the property is conveyed "subject to" the mortgage, describing it, does not import an assumption of the mortgage by the grantee, even if

the deed recites as the consideration the full value of the land as estimated in the purchase; and if the deed recites only a nominal consideration, a strong presumption arises that the grantee does not assume payment of the mortgage as part of the price, but merely buys the land as it is with the encumbrances on it.

ID.—FORM OF AGREEMENT TO ASSUME MORTGAGE.—It is not necessary that the promise to pay the mortgage should appear in the deed, or in writing. The obligation may be made orally or in a separate instrument; it may be implied from the transaction of the parties, or it may be shown by the circumstances under which the purchase was made, as well as by the language used in the instrument.

ID.—EXECUTORY AGREEMENT TO PURCHASE LAND—WHEN DOES NOT IN-CLUDE ASSUMPTION OF MORTGAGE.—An agreement by a grantee to assume a mortgage existing on the property is not established by the recital in the executory contract of purchase that the property is sold "subject to" the mortgage, and that "the balance of the said purchase money is due and payable upon tender of a good and sufficient deed of the property sold," where it appears that the agent who executed the agreement upon the part of the grantee was without authority to make such an agreement for such an assumption and that the mortgage was not due at the time provided for the payment of such balance of the purchase price.

ID.—ESTOPPEL TO DENY ASSUMPTION OF MORTGAGE.—Such recitals in the executory contract of purchase do not estop the grantee from denying an assumption of the mortgage.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco and from an order vacating a judgment and permitting plaintiff to amend the complaint. B. V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

Edward C. Harrison, and Maurice E. Harrison, for Appellant.

Tobin & Tobin, and George A. Clough, for Respondent.

Vogelsang & Brown, and Edwin A. Meserve, for Respondent Montgomery, in No. 6263.

SHAW, J.—In this action the plaintiff sued to foreclose a mortgage executed to it by the defendant, Dickinson, to secure his note for sixty-five thousand dollars. Dickinson afterward conveyed the land to the defendant, Montgomery.

The amended complaint alleges that Montgomery agreed to assume and pay the said mortgage as a part of the consideration of the transfer to him, and prayed for a deficiency judgment against both defendants. Two appeals are presented by Dickinson, numbered as above. No. 6263 is an appeal from that part of the judgment which directs the entry of a deficiency judgment against Dickinson, in case the land does not bring the amount of the mortgage debt, costs, and attorney's fees on foreclosure sale. No. 6350 is an appeal by him from an order afterward made on his own motion, under section 663 of the Code of Civil Procedure, to vacate the judgment and enter another and different judgment on the findings. This motion was granted with the consent of the plaintiff. We will first consider the appeal numbered 6263.

The answer of Dickinson does not deny the averment of the complaint that Montgomery agreed to assume and pay the mortgage debt in consideration of the transfer to him. It alleges as an affirmative defense that after the conveyance to Montgomery and the assumption by him of the note and mortgage, the plaintiff, with knowledge thereof, made a new contract with Montgomery for the payment of a higher rate of interest and, without Dickinson's consent, also collected from Montgomery interest in advance on said debt, and thereby extended the time for the payment thereof until the expiration of the time for which the interest was paid. Upon this defense Dickinson's claim was that by the transfer to Montgomery and the assumption by him of the mortgage, Montgomery became the principal debtor and Dickinson a surety upon the mortgage debt, and that by the subsequent change in the contract Dickinson was released from all obligation upon the note and from liability to a deficiency judgment. In a so-called cross-complaint against Montgomery, Dickinson alleged the same change of contract and assumption by Montgomery of the mortgage and asked that if he should be adjudged liable for any deficiency, the judgment should declare that if he were compelled to pay the same, he should be subrogated to plaintiff's rights and recover the same against Montgomery.

The court found that the deed to Montgomery did not contain any assumption of the mortgage debt, but merely de-

clared that the premises were "subject to the mortgage" of plaintiff, that Montgomery did not, by accepting the deed, assume the mortgage debt or agree to pay the debt, that he never agreed with any one that as a part of the consideration of the deed or at all, he would assume and pay the debt, that after the transfer, by arrangement between plaintiff and Montgomery, the rate of interest on the debt was raised without the knowledge or consent of Dickinson and that interest was thereafter paid at the new rate. No finding was made as to the extension of time by payment of interest in advance.

The first proposition urged on behalf of Dickinson is that the fact that Montgomery assumed payment of the mortgage debt is admitted by the pleadings, so far as he is concerned, and consequently that it is a fact established in his favor, upon which no finding was required and which a finding could not control or change.

The code provides that "every *material* allegation of the complaint, not controverted by the answer, must, for the purposes of the action, be taken as true." (Code Civ. Proc., sec. 462.) A finding which is contrary to a fact thus admitted by the pleadings must be disregarded. (*Bradbury* v. *Cronise,* 46 Cal. 288; *White* v. *Douglass,* 71 Cal. 119, [11 Pac. 860]; *Ortega* v. *Cordero,* 88 Cal. 226, [26 Pac. 80]; 1 Ency. of Plead. & Prac., 789.) But these propositions are, by the terms of the code itself, applicable only to allegations which are material. A material allegation is one which is essential to the cause of action stated in the complaint and which, if not admitted, the plaintiff must prove to maintain his action. (Code Civ. Proc., sec. 463.) This is illustrated by the case of *Canfield* v. *Tobias,* 21 Cal. 349, 360. There the plaintiff, anticipating an affirmative defense, had alleged certain facts to rebut the same. The defendant in his answer set up the affirmative defense, but did not deny the facts alleged in the complaint in rebuttal. The court held that this failure to deny these extraneous allegations did not constitute an admission thereof, saying "the matter alleged may be material in the case, but immaterial in the complaint, and a plaintiff cannot by pleading such matter at the outset call upon the defendant to answer it." Where a complaint is directed against two persons, and the liability of one involves some facts which are not material to the liability of the other,

upon the cause of action declared upon, and they answer separately, neither is required to answer those allegations which relate solely to the liability of the other. The present case illustrates this proposition. The action was upon the note and mortgage executed by Dickinson alone. His liability was shown by the allegations of the execution and non-payment of the note and mortgage. Montgomery did not execute them. He was a proper party because he was a subsequent purchaser of the land. But his personal liability for the debt and to a deficiency judgment was founded on the extraneous fact that he had assumed payment of the mortgage debt. This fact had no relation whatever to the original liability of Dickinson. It was not a fact material to the cause of action stated against Dickinson, either to obtain a foreclosure or to obtain a deficiency judgment. Hence, it follows that Dickinson was not called upon to deny it and that his failure to deny it did not put it into the category of admitted facts for the purpose of the action, so far as Dickinson and the plaintiff were concerned. Dickinson had, as he claimed, a good defense to the action. It consisted of the facts: 1. That Montgomery had assumed payment of the mortgage; 2. That afterward Montgomery and the plaintiff had, without Dickinson's consent, changed the contract in a material part and had extended the time of payment thereof. This was an affirmative defense, and in order to set it up in his answer it was necessary for him to allege therein the aforesaid facts. He was not at liberty to treat the allegation of the complaint, directed solely at Montgomery, as an allegation in his own favor and have it stand as an admitted fact by failing to deny it. His defense required that he should affirmatively allege it. Consequently, it does not stand as a fact conclusively admitted in his favor.

We do not here refer to those cases where facts are treated on the trial as alleged, or as admitted, and afterward on appeal the losing party seeks to gain advantage by the technical omission or failure to properly allege or deny them. (*Sukeforth* v. *Lord*, 87 Cal. 402, [25 Pac. 497] ; *Illinois Trust etc. Bank* v. *Pacific Ry. Co.*, 115 Cal. 297, [47 Pac. 60] ; *Gervaise* v. *Brookins*, 156 Cal. 112, [103 Pac. 332].) This proposition is involved in this case and applies in favor of Dickinson himself. For lack of a direct averment that Montgomery

had assumed payment of the mortgage as part of the consideration of the deed, his affirmative defense of a release by the change of contract and extension of time might have been held to be insufficiently pleaded. But there were allegations in his answer referring to such assumption of the mortgage debt, and upon the trial the fact appears to have been considered as alleged for all purposes of the case with respect to both defendants. It is therefore to be considered here, with respect to Dickinson, as if it had been properly alleged in his answer. In that view of the case, it is deemed to have been controverted by the plaintiff, for the purposes of the trial of that defense and a finding upon it was necessary. We must therefore hold that the finding that Montgomery did not assume the mortgage debt is not contrary to the admission of the pleadings and that it must stand as a fact in the case, unless it is contrary to the evidence.

We cannot say upon the evidence as a whole that this finding is without support. Such an agreement was not shown by the statement in the deed to Montgomery that the property was "subject to" the mortgage, describing it. Such language would not have had that effect, even if the deed had recited as the consideration the full value of the land as estimated in the purchase. (Jones on Mortgages, 6th ed., sec. 748; *Drury* v. *Tremont Imp. Co.,* 95 Mass. 168.) There are cases which appear to hold that such a clause in a deed imports an assumption of the mortgage by the grantee, but the better reason and the weight of authority is to the contrary. This deed, moreover, recited a consideration of only ten dollars. It is clear that there could be no implication arising from such a deed that the grantee, as a part of that small consideration, had assumed or agreed to pay a mortgage of sixty-five thousand dollars. On the contrary it raised a strong inference, if not a conclusive presumption, that Montgomery did not assume payment of the mortgage as part of the price, but merely bought the land as it was with encumbrances on it. This inference is evidence in the case and must prevail unless it is overcome by other evidence showing that there was such an agreement. It is not necessary that the promise to pay the mortgage should appear in the deed, or in writing. "The obligation may be made orally or in a separate instrument; it may be implied from the transaction

of the parties, or it may be shown by the circumstances under which the purchase was made, as well as by the language used in the instrument." (*Hopkins* v. *Warner,* 109 Cal. 133, [41 Pac. 868].)

Montgomery testified positively that he did not agree to assume or pay the mortgage. The contention that such an agreement was made rests upon the language of two executory agreements made during negotiations for the purchase by Tucker, Lynch & Coldwell, Inc., a corporation which was employed by Montgomery to make the purchase for him. Prior to giving it authority to buy, he was told by its officers that the price of the property was eighty thousand dollars that it was mortgaged for sixty-five thousand dollars, that it would require seventeen thousand dollars in cash to buy it, including one thousand dollars commissions to the corporation, and that they believed it could be resold at an advance on that price in a short time. Upon these statements he gave them his check for seventeen thousand dollars and instructed them to buy the property if it could be had for that amount. Nothing was said between them about any agreement by him to assume or pay the mortgage debt, but it was fully understood that he was to pay only the difference between the price fixed and the mortgage debt and take the land with the mortgage still remaining on it. This was in November, 1906. The mortgage did not become due until February 7, 1907. He did not in fact authorize the corporation to agree on his behalf to pay the mortgage debt to effect the purchase. The only direct evidence thereof is in the executory agreements mentioned. By the first, dated November 17, 1906, Dickinson agreed to sell to the corporation at the price of seventy-nine thousand dollars. By the second agreement, dated November 19, 1906, the corporation agreed to sell to Montgomery at the price of eighty-one thousand dollars. The two are substantially identical in form. We need state the material terms of the first one only. It began as follows: "Received from Tucker, Lynch & Coldwell, Inc., the sum of $2,000.00, being deposit on account of $79,000.00, the purchase price this day sold to it or nominee." It then describes the property and proceeds thus: "Subject to mortgage to Hibernia Bank dated ———— for $65,000.00 with interest at 4¼% net. Terms of sale: thirty days are allowed

the purchaser to examine title and consummate the purchase; at the termination of said term the balance of purchase money is due and payable on tender of a good and sufficient deed of the property sold.'' It further provides that if the title prove incurably defective the deposit should be returned, and that if the purchaser failed to consummate the purchase the deposit was to be forfeited. It was signed by Dickinson and appended thereto was an agreement signed by Tucker, Lynch & Coldwell, Inc., whereby it agreed to purchase the property on the terms and conditions stated above. The second agreement running to Montgomery, allowed twenty-eight days to examine the title and consummate the purchase. It was signed by Tucker, Lynch & Coldwell, Inc. The appended writing to that agreement was filled out for Montgomery's signature, but it was not signed. It does not appear that it was ever seen by Montgomery. There is no evidence that Montgomery authorized Tucker, Lynch & Coldwell, Inc., to make an agreement in his behalf that he should assume payment of the mortgage debt, or become personally liable for it. He told its officers to buy the property for him if it did not require the payment by him of more than seventeen thousand dollars, taking the land at the price of eighty thousand dollars, subject to the mortgage. But this did not authorize the agent to make an agreement whereby he should become personally liable for the debt.

The appellant claims that these agreements constitute conclusive evidence of an assumption by Montgomery of the mortgage debt. We cannot concur in this view. The purchase price is named in each agreement and in each the amount of the mortgage debt is included as a part of that price, although the fact that it included said mortgage debt is not stated. This does not express a promise or covenant to pay the price. It merely fixes the price. It is followed by the statement that the property is sold to Montgomery ''subject to'' the mortgage for sixty-five thousand dollars. This, again, as we have seen, does not imply that Montgomery shall pay the mortgage, but that he takes the property as it is and that the grantor is to that extent relieved from the force of the covenant against encumbrances implied from the agreement to convey ''by good and sufficient deed.'' The next provision of the agreement is that at the termination

of the time allowed for the examination of the title "the balance of the said purchase money is due and payable upon tender of a good and sufficient deed of the property sold." This, especially, it is argued, is a direct promise to pay the entire price. But when the circumstances attending the sale are considered this not only does not imply such agreement, but implies the contrary. The mortgage did not become due until February 7, 1907. Hence it could not be paid in November or December, 1896, without the consent of the mortgagee. The interpretation contended for would require Montgomery to pay it on December 17, 1906, as a condition of consummating the contract. It is not pretended that this was ever expected of him. The more obvious intention was that which was actually carried out, that is, that Montgomery should at the consummation of the purchase, pay enough to make up the sixteen thousand dollars constituting the difference between the mortgage and the price named, and that the phrase "balance of the said purchase money" was used to designate the balance of this difference after deducting the two thousand dollars already paid. That this was the understanding of the parties is shown by the fact that Montgomery paid the sixteen thousand dollars, from which the agents deducted two thousand dollars as commissions, and thereupon paid to Dickinson the remaining fourteen thousand dollars, who accepted the same and executed the deed accordingly. From all these circumstances we think the court below could reasonably have concluded that the two executory agreements did not express a promise to pay the debt, but were in the nature of preliminary negotiations which were superseded by and merged in the deed by which the deal was consummated and which declared only that the property was conveyed subject to the mortgage. This theory is confirmed by the fact that the agent had no authority to enter into such personal obligation for Montgomery and that there is no evidence that he ever was informed thereof or ratified the same.

It is claimed that Montgomery is estopped to deny that he did assume the mortgage. This is based on the aforesaid recitals in the agreements for the purchase. These recitals were inserted by his agents. There is no evidence, as we have shown, that he was cognizant of them at the time he received the deed and paid the fourteen thousand dollars to

Dickinson, nor that any act of his furnished any ground to Dickinson to believe that Montgomery had authorized his agents to covenant for the payment of the mortgage as a condition of the sale. There was nothing apparent to Dickinson to justify the conclusion that the corporation has such authority, except that Montgomery had authorized it to buy the land, and had furnished it with money to pay the difference between the price agreed on and the mortgage debt. The deed which Dickinson executed, as we have seen, carried the implication that there was to be no personal obligation by Montgomery to pay that debt. We do not think that from these circumstances Dickinson was warranted in believing that Montgomery had authorized the corporate agent to enter into such a covenant for him, that he was at least put on inquiry as to the authority of the agent to make such agreement, and that there was no estoppel against Montgomery.

All the other points presented by the appellant upon appeal No. 6263 relate to and depend upon the proposition that there was an assumption of the mortgage debt by Montgomery. As we have concluded that the finding upon that subject to the contrary is sustained by the evidence, and that there was no admission of that fact by the pleadings, so far as Dickinson was concerned, it is unnecessary to consider the other propositions discussed.

We now take up the appeal in case No. 6350. Section 663 of the Code of Civil Procedure provides that where a judgment is given upon findings of fact, or upon a special verdict, such judgment may for certain causes be vacated and another and different judgment entered on the same facts, on motion of the losing party. Section 663a provides that ''an order of the court granting such motion may be reviewed on appeal in the same manner as orders made on motions for a new trial.'' The judgment against Dickinson was entered on March 4, 1912. The notice to vacate it was served, naming April 2, 1912, as the date for the making of the motion. The matter was continued and the motion was submitted to the court for decision on April 26, 1912. No order was made thereon until July 15, 1912. The plaintiff had consented that the motion should be granted on condition that it be given leave to amend its complaint to conform to the evidence given at the trial. Thereupon the court ordered that the

motion "to vacate and set aside said judgment" be granted, and that plaintiff be permitted to amend its complaint to conform to the proof, but it did not go further and enter another and different judgment on the findings as the motion contemplated. The effect of the order was to leave the case in the court below with findings made and filed, but no judgment entered. This is the order appealed from in No. 6350.

In the mean time, on April 29, 1912, after the submission of the motion and before decision thereon, Dickinson appealed to this court from the part of such judgment directing a deficiency judgment against him, being the appeal in case No. 6263 aforsaid.

We do not deem it advisable to consider the technical objections that might perhaps be urged to the maintenance of the appeal from the order, as, whether or not it is premature because the court below stopped the proceeding half way and did not enter another judgment, or, since the same questions would be involved on the appeal from the judgment, whether such appeal did not waive further proceedings on the motion or oust the lower court of jurisdiction to consider it. Considering the appeal on its merits, the only objection which the appellant can urge to the action of the court below on his motion is that it erroneously allowed the plaintiff to amend its complaint to conform to the proof. The obvious purpose of such amendment was to omit from the complaint the allegation that Montgomery had assumed payment of the mortgage debt, an allegation which was supposed to constitute an admission in favor of Dickinson contrary to the fact established by the evidence and found by the court. We are of the opinion that the court had discretion to permit such an amendment upon a motion under section 663 and 663a, and that, under the circumstances here appearing, the amendment was properly allowed.

The result is that the order must be affirmed. As this will leave the case without a final judgment it will be necessary for the court below to enter a new judgment to the same effect as the one appealed from in No. 6263.

The judgment appealed from in case No. 6263 and the order appealed from in case No. 6350 are affirmed. The court below will enter a new judgment upon the findings to the same effect as before.

Sloss, J., and Angellotti, J., concurred.