[L. A. Nos. 3858, 3898. In Bank.—February 4, 1918.]

## GEORGE H. ANDREWS, as Executor, etc., Respondent, v. CATHERINE F. ROBERTSON et al., Defendants; WILLIAM MANN, Appellant.

APPEAL—TIME FOR FILING REQUEST FOR TRANSCRIPT—DATE OF NOTICE OF ENTRY OF JUDGMENT.—The date of an acknowledgment of service of notice of entry of judgment is not conclusive, and in the instant case evidence was held sufficient to sustain a finding of the trial court that notice to the clerk by the appellant, requesting the preparation of a transcript under section 953a of the Code of Civil Procedure, was filed within ten days after notice of entry of the judgment, as required by that section.

MORTGAGE—ASSUMPTION BY GRANTEE OF MORTGAGED PREMISES—LIABILITY OF GRANTEE DEPENDENT ON LIABILITY OF GRANTOR.—Personal liability of the grantor of mortgaged premises to the mortgagee for the mortgage debt, is essential to the creation of personal liability on the part of his grantee to the mortgagee by any transaction solely between such grantor and grantee.

ID.—PERSONAL LIABILITY OF GRANTEE OF MORTGAGED PREMISES—HOW CREATED.—Although the assumption of personal liability by the grantee of mortgaged premises is usually expressed in the deed or in some other writing, it is not necessary that there should be a formal promise; his intention to assume the liability may appear from a consideration of the entire instrument, or the obligation may be made orally or in a separate instrument, or may be implied from the transaction of the parties, or may be shown by the circumstances under which the purchase was made as well as by the language used in the instrument.

ID.—CONVEYANCE SUBJECT TO MORTGAGE—LIABILITY NOT ASSUMED.—A conveyance merely subject to a mortgage imposes no personal liability for the mortgage debt on the grantee.

ID.—ASSUMPTION OF MORTGAGE BY GRANTEE—NEW PROMISE WITHOUT CONSIDERATION.—Where in pursuance of an agreement to convey subject to a mortgage, a conveyance is executed, neither the agreement nor the conveyance calling for or implying an assumption of personal liability by the grantee, but at the time of the delivery of the conveyance the grantee, without any new consideration, orally promised his grantor to "protect" him from the mortgage, such promise was a mere voluntary promise without binding force for want of consideration, and did not render the grantee liable to the mortgagee for the mortgage debt as upon an assumption of the mortgage.

ID.—FORECLOSURE—JUDGMENT FOR DEFICIENCY—APPEAL.—An appeal lies from a judgment of deficiency, as docketed by the clerk, as well as

from the judgment requiring or directing the docketing, and although the appeal from the deficiency judgment is perhaps unnecessary when an appeal is taken from the judgment directing it, the former appeal will not for that reason be dismissed.

APPEAL from judgments of the Superior Court of San Luis Obispo County. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

Clinton G. Dodge, and Fitzgerald, Abbott & Beardsley, for Appellant.

Wm. Shipsey, for Respondent.

ANGELLOTTI, C. J.—This is an action for foreclosure of two mortgages. Plaintiff prevailed, the judgment decreeing a sale of the mortgaged premises, and the docketing of judgment for any deficiency after application of the proceeds of the sale, against several of the defendants, including defendant Mann. Said Mann appealed both from the judgment, and from the subsequent docketing by the clerk of a deficiency judgment against him.

There is no force whatever in the contention of learned counsel for respondent that the transcript prepared and settled by the trial judge under the provisions of section 953a of the Code of Civil Procedure cannot be considered on these appeals. In so far as the appeal from the judgment is concerned, the sole point is that the notice to the clerk of intention to appeal and request for transcript specified in said section was not filed with the clerk "within ten days after notice of entry of the judgment" as required by the section. Objection to the settlement by the trial judge of such transcript on this ground was made at the time of settlement and overruled. In support of the objection the whole showing was a notice of entry of the judgment on April 7, 1914, bearing acknowledgment of service "this April 9th, 1914, Anson Hilton, attorney for defendants Percival, Pizmo Beach Resort Co. and Lowell. Clinton G. Dodge, attorney for defendants Wm. Mann, Chas. H. Mann and Agnes G. Mann," and proof of the fact that the request for transcript was not filed until April 21, 1914. It was solely upon this acknowledgment of service by Mr. Dodge that respondent

based his claim that the notice was served on April 9, 1914, no attempt being made to show any other service. In reply Mr. Dodge filed an affidavit to the effect that he never saw any notice of entry of judgment until he found this notice on his desk in his office in Oakland, Alameda County, on April 13, 1914, inclosed in an envelope addressed to the attorney for respondent at San Luis Obispo; that he thereupon signed the acknowledgment, neglecting to observe the date already there (April 9th), and forwarded the same by mail in said envelope to the attorney for the respondent; and that on the same day (April 13th) he made a note in his office register of the fact of such service on April 13th. Manifestly this showing by Mr. Dodge furnished ample support for the conclusion of the trial judge that service of notice of entry was not made prior to April 13th, and that the request for the transcript filed April 21st was therefore in time. If accepted by the trial judge as true, this evidence entirely destroyed the effect of the admission of service as of April 9th. As to the appeal from the deficiency judgment, the stipulation of the respective parties fully authorizes the use of this transcript provided, as we hold, that the proceeding therefor was initiated in time.

On the appeal from the judgment the principal question on the merits is whether the facts warranted a deficiency judgment against appellant Mann, the judgment not being otherwise assailed.

The mortgages were' made March 10, 1909, by Catherine F. and John E. Robertson to the Andrews Banking Company (plaintiff's assignor) to secure a loan of forty-three thousand four hundred dollars and interest at the rate of nine per cent per annum, evidenced by their promissory note of even date with the mortgages to said company. This note was payable five thousand dollars on March 10, 1912, and five thousand dollars on March 10th of each year thereafter until paid. On February 25, 1910, the Robertsons (mortgagors) conveyed the mortgaged property to T. B. Draper and W. W. Percival. It is conceded that these grantees did not assume the mortgage debt. On April 8, 1910, they executed a trust deed of the property to secure performance of an obligation in favor of defendant A. J. Lowell, and in accordance with the terms of this trust deed the property was sold to said Lowell on December 29, 1911, by the trustees, who executed their con-

veyance therefor to Lowell on April 13, 1912. Concededly there was in his purchase of the premises no assumption of the mortgage debt. But about the time of the trustee's sale Lowell entered into a written agreement with the Andrews Banking Company, whereby, in consideration of the acceptance by the company of four thousand five hundred dollars in full payment of all interest to January 1, 1912, the payment by the company of one-half the state and county taxes on the property for the year 1911–12, and the reduction of interest on the debt from January 12, 1912, to six per cent, Lowell was to pay the debt secured by the mortgages. On April 17, 1912, Lowell conveyed the mortgaged property to Charles Mann, a son of appellant. The deed was an ordinary bargain and sale deed, with an expressed consideration of ten dollars, and no mention was made therein of any mortgage or mortgage debt. The deed was made to Charles Mann at the request of appellant, who conducted all the negotiations and who, we may assume, was the real purchaser. Plaintiff's theory in so far as the question of the personal liability of appellant is concerned is that by virtue of his agreement with the Banking Company Lowell became personally liable to the company for the mortgage debt—that the result of the transaction was to create what in effect was a new undertaking from Lowell to the company, and that when appellant purchased the mortgaged property from Lowell, he agreed to assume and pay the debt. The trial court so found, the finding as to appellant being that "at the time of acquiring the same and as a part of the same transaction, said Wm. Mann agreed with said Lowell that he (Mann) would assume and pay said debt and other matters secured by said mortgages." This finding is assailed as being without sufficient support in the evidence.

To give to any transaction between Lowell and Mann the effect of creating any personal liability on the part of Mann to the mortgagee for the mortgage debt, it was essential, of course, that there should have been such a personal liability on the part of Lowell. (See *Ward* v. *De Oca,* 120 Cal. 102, [52 Pac. 130].) We can see no reason why, by virtue of the new agreement between Lowell and the bank, such a personal liability was not created. The same principle which renders the grantee of the mortgagor personally liable to the mortgagee for the mortgage debt in the event that in purchasing

he assumes the same (see *Hopkins* v. *Warner,* 109 Cal. 136, [41 Pac. 868] ; *Ward* v. *De Oca, supra*), would, therefore, render Mann personally liable to the Banking Company here, if he agreed with Lowell to assume the debt. He could be so liable only in the event of such assumption of the debt. As we have seen, the trial court found that he did so agree. If this finding is not sufficiently sustained by the evidence, the judgment must be reversed in so far as it awards a deficiency judgment against Mann. We are of the opinion that the finding has no substantial support in the evidence.

As we have seen, the deed to Mann contained no reference whatever to any mortgage or mortgage debt. Such mention, however, is not essential to the creation of a personal liability, although where an understanding or agreement exists that the grantee shall assume such liability it is ordinarily the custom of careful persons to express it in the deed or in some other writing. The well-settled rule in this regard was stated in *Hopkins* v. *Warner,* 109 Cal. 133, [41 Pac. 868], as follows: "It is not necessary that there should be a formal promise, on the part of the grantee, to pay the mortgage debt, in order to render him liable therefor, if his intention to assume the debt appears from a consideration of the entire instrument. The obligation may be made orally or in a separate instrument; it may be implied from the transaction of the parties, or it may be shown by the circumstances under which the purchase was made, as well as by the language used in the agreement."

In the case at bar the conveyance was preceded by a written agreement, which the evidence without substantial conflict shows was carefully prepared and fully expressed the agreement of the parties. This agreement was entered into April 8, 1912, and was one for the exchange of certain properties of Lowell and Mann, the property of Lowell being the mortgaged property. It recited that the parties were making an exchange of said properties, "each conveying to the other . . . the properties hereinabove described, free and clear of all liens and encumbrances of every kind and nature, save and except only" that Mann's property "may be encumbered as follows: Telegraph Ave. & 43rd St. property is subject to an encumbrance of $10,000, bearing interest at the rate of 6 per cent per annum, which can remain. Pacific Ave. & 6th St. property, Alameda, is subject to a first mort-

gage of $7,000 . . . interest 6 per cent per annum, and a second loan of $3,000 interest six per cent per annum for a period of two years, and the Watsonville property is subject to an encumbrance of $5,000, bearing interest at the rate of 7 per cent per annum." Also, .that Lowell's property (the mortgaged property) "is subject to an encumbrance of $43,400, from the Andrews Bank of San Luis Obispo . . . bearing interest at the rate of 6 per cent, and a loan of $1,600 from H. H. Carpenter of San Luis Obispo County. And no other liens shall be on any of the above described properties." It was further agreed that "interest, insurance, taxes, water bills, electric bills, and all other accounts against the properties shall be prorated up to date of closing deal by said exchange of deeds."

It is too clear for question that nothing in this agreement imports any assumption by either party of any mortgage debt. It is practically elementary law that a deed which is merely made subject to a specified mortgage does not alone render the grantee personally liable for the mortgage debt. (See Jones on Mortgages, sec. 748; *Hibernia Sav. & Loan Society* v. *Dickinson,* 167 Cal. 616, 621, [140 Pac. 265].) The language in this agreement was apparently carefully adopted to exclude all idea of the assumption of any *debt* by either grantee, and for the purpose of showing simply that each party was to take his property subject to the lien of the specified encumbrances. Lowell agreed to convey to Mann his property subject *to the lien of the specified encumbrances* in return for a conveyance from Mann of his property *subject to the lien of the specified encumbrances thereon,* interest on all encumbrances to be "prorated" up to date of closing deal by said exchange of deeds. In this connection it is only necessary to refer to the opinion in *Hibernia Sav. & Loan Society* v. *Dickinson, supra,* where the court, after considering the effect of somewhat similar language and saying that it did not import an assumption of the debt, said: "On the contrary it raised a strong inference, if not a conclusive presumption, that Montgomery (the purchaser) did not assume payment of the mortgage as part of the price, but merely bought the land as it was with encumbrances." Admittedly it was in execution of this agreement by the parties that the conveyances were subsequently exchanged.

A careful analysis of the evidence discloses that no one claims that after the making of this written agreement Mann said a word or did an act importing any assumption of the debt until the parties met on April 17, 1912, to carry the existing agreement into effect by the exchange of deeds. Lowell testified substantially that he delivered the deed to Mann at the same time that he delivered to him his written agreement with the Andrews' Banking Company reducing the rate of interest to six per cent, and also paid him $1,619.95, which was the amount then found due him on the "prorating" of interest, etc., provided for in the agreement. It was at *this* time, Lowell testified, when the fact that a five thousand dollar installment of the forty-three thousand four hundred dollars had become due and that payment had been demanded was spoken of, that Mann said that "he would protect me against this mortgage." Mann's testimony substantially denies any promise to this effect. It is on this alone that the claim of an agreement between Lowell and Mann that Mann would assume the mortgage debt is founded.

We regard it as entirely immaterial whether the fact was as testified to by Lowell or not. If Mann did then make the statement attributed to him by Lowell it was a mere voluntary promise without binding force. The validity of a promise by a grantee of a mortgagor to such mortgagor to assume the mortgage debt, where there is no new and independent consideration, is based on the theory that such assumption in some way constitutes a part of the consideration for the grant. Here clearly it constituted no part of the consideration, and there was no new consideration. The terms of the exchange of properties had been carefully and precisely specified in the written agreement in such a way as to exclude the idea of any such assumption, and the parties had met to carry into effect the written agreement. By the terms thereof Lowell was then legally bound, in consideration of Mann delivering to him a deed of his specified properties subject to the lien of the specified encumbrances thereon, to deliver to Mann a deed conveying the property herein involved, subject only to the lien of the specified encumbrances. He could not require as a condition precedent to such delivery, in view of the terms of the agreement, any undertaking by Mann to assume the debt secured by the encumbrance, and his testimony does not indicate that he claimed otherwise.

Under the circumstances there was no consideration whatever for any such promise on the part of Mann as is testified to by Lowell. As already said, it was a mere voluntary promise without binding force, because of absolute want of consideration therefor. Learned counsel for respondent has in no way attempted to reply to this claim of appellant, which was made both in his opening and closing brief.

Some reliance is placed upon acts and statements of Mann subsequent to the conveyance as indicating that he regarded himself as personally obligated for the mortgage debt, and that he dealt with the mortgagee, upon that theory. We have carefully examined all the testimony in this connection, and it will suffice to say that we find no word or act of his which is inconsistent with the theory that he held this property subject to the lien of the mortgages, and without any assumption of the mortgage debt. There was never any valid personal undertaking or agreement on the part of Mann to personally pay this debt, and the finding of the trial court in regard thereto is without substantial support in the evidence. Taking the property subject to the lien of the mortgages as he did, such property was liable for the debt, but there was no personal liability on his part. In so far as the judgment declares any such personal liability and attempts its enforcement, it must be reversed.

In view of our conclusion on this question it is unnecessary to consider any other of the many points made for reversal.

As to the appeal from the deficiency judgment docketed by the clerk, the whole claim is the same as the claim on the appeal from the judgment, viz., that a deficiency judgment against Mann was not warranted for the reason that there had not been on his part any assumption of the mortgage debt. Respondent claims that the appeal from the deficiency judgment docketed by the clerk, even if authorized by law, was entirely unnecessary, that a party may not maintain two separate appeals for the purpose of reviewing the same matter, and that one or the other of the appeals should be dismissed. Of course, the appeal from the judgment of the court which appellant had the right to take and maintain, cannot be dismissed. Indeed, such appeal is essential to the protection of appellant against the clerk's docketed judgment, for the latter was entered in strict conformity with

the terms of the judgment of the court, and cannot be disturbed if that part of the court's judgment remains in force. We recently held that an appeal lies from a deficiency judgment as docketed by the clerk. (See *Ewing* v. *Richvale Land Co.* 176 Cal. 152, [167 Pac. 876].) So such appeal cannot be dismissed as one not authorized by law. It was perhaps an unnecessary appeal, for without a reversal of that portion of the judgment requiring the docketing, such docketing could not be disturbed, and the reversal of that part of the judgment of the court would necessarily deprive the docketed judgment for the deficiency of all force. We do not, however, feel warranted in dismissing the appeal for this reason. The only practical question involved is one of costs of appeal, and appellant stipulates in his brief that in the event of reversal he waives all costs on the appeal from the docketed deficiency.

In so far as the judgment holds appellant personally liable for any deficiency existing after the sale of the mortgaged property and application of the proceeds of such sale, and directs the docketing of a judgment against him for such deficiency, it is reversed, and in all other respects it is affirmed. Appellant shall recover his costs on the appeal from such judgment. The deficiency judgment subsequently docketed against appellant is reversed. Appellant shall recover no costs on his appeal therefrom.

Shaw, J., Sloss, J., Victor E. Shaw, J., *pro tem.*, Melvin, J., and Wilbur, J., concurred.