(No. 5420. April 24, 1930.)

LETTIE LITTLE, Respondent, v. BOISE TRUST COMPANY, a Corporation, JEWELL H. ROBERTS, LULU M. ROBERTS and JOHN D. LITTLE, Appellants.

[287 Pac. 954.]

Richards & Haga, for Appellant Boise Trust Company.

Martin & Martin, for Respondent.

McNAUGHTON, J.—This is an action for a receiver, to foreclose a mortgage and fix certain personal liability, under the claim that such liability had been assumed by the defendant, Boise Trust Company. The action grows out of a note and mortgage made by August W. R. Berr and wife on October 31, 1912, for $2,200, secured by mortgage upon forty acres of land situated in the Emmett Irrigation District. The note represents a loan made to Berr by the Boise Title and Trust Company, predecessor of the Boise Trust Company, on behalf of one of its customers, John Little of Horicon, Wisconsin. Pursuant to custom the note and mortgage were made payable to the Trust Company. The note was indorsed without recourse and the mortgage assigned by it to John Little. A second commission mortgage for $66 was taken by the Trust Company, and there was a third mortgage executed by Berr and his wife for $2,500, in favor of Sheridan K. Atkinson, on this land. This mortgage was assigned by Atkinson to N. C. Larsen.

Berr and his wife conveyed the forty acres in question to N. C. Larsen, subject to the John Little mortgage for $2,200, and subject to the $66 mortgage in favor of the Trust Company. In the deed to Larsen the grantee did not assume or agree to pay either of the prior mortgages. The record shows Larsen had difficulty in keeping up the taxes and assessments and interest on these prior mortgages. It shows a good faith effort on the part of the Trust Company, on behalf of Mr. Little, to collect the $2,200 mortgage and the interest on that mortgage. Failing in this, a good faith effort on the part of the Trust Company was made to secure a renewal from N. C. Larsen. The Trust Company failing in this, took a deed and itself advanced Little interest upon the mortgage. It paid taxes, water assessments, and later constructed buildings, fences and other improvements on this land, until the Trust Company had expended,

on and prior to June, 1922, $4,435.23 on account of the lands covered by this mortgage.

In making the advancement of interest money to Little, and in making the advances for taxes, assessments and improvements on these lands the Trust Company did not at the time advise Little that these advances were being made by it, and it was, we think, unauthorized by John Little to make any such advancements in his behalf.

The circumstances of the deed to the Trust Company were these: Larsen, being ill, decided to deed the land over to avoid foreclosure proceedings. The Trust Company consented to this. Before a deed was made Larsen died, and his heirs, in carrying out this arrangement, executed a deed to Jewell H. Roberts, an employee of the Trust Company. At the insistence of the heirs, for their protection, this deed contained a clause whereby the grantee assumed and agreed to pay this mortgage. Roberts executed a deed in blank and delivered it to the Trust Company. The deed in blank was subject to this mortgage of $2,200, but contained no clause of assumption of the mortgage indebtedness. The name of the Boise Trust Company was later entered as grantee in this deed. Five years after the deed was taken by Roberts, John Little died. Thereafter this mortgage was distributed to the plaintiff in this action, Lettie Little.

The administrator of the Little estate and the Boise Trust Company, after a year's negotiation, entered into a contract for the settlement of all differences between them. The judgment of the district court is based primarily upon this contract. Judgment was for all plaintiff claimed. By the findings the court found the Trust Company was owner of the land, had assumed payment of the mortgage debt, and decreed it liable for any balance of the indebtedness remaining after sale and application of the security. The chief claim of defendant is that it did not assume any part of this indebtedness. In this behalf it appeals, and by its assignments claims the record does not disclose such liability, and also claims reversible error in the record.

We shall go directly to the contract of January 1, 1923, upon which, by the findings, the judgment of the district court is mainly bottomed. But before examining that we shall examine the assignment charging error in rejection of proffered testimony explanatory of the matters in difference between the parties which the contract purports to settle. The respondent offered testimony tending to show that an officer of the Trust Company, at a time prior to entering into this contract, admitted the Trust Company personally liable for this indebtedness. Appellant objected on the ground this was extraneous matter and merged in the contract. This objection was sustained. Later when the appellant offered testimony of a somewhat similar nature but directly contrary in effect, respondent objected and appellant's testimony was not received. These objections, we think, were technical, and the ruling was likewise technical. A little more liberality would have been more helpful to the court in deciding the matter, but we do not think the ruling was erroneous. If it were we doubt if appellant is in position to complain, having invited it. However, the record shows the parties to the contract were represented in the preparation and acceptance of the contract by competent attorneys who were entirely familiar with the whole subject and the respective claims of the parties.

We think the contract is properly in the record and fixes the rights between the parties as to all matters treated.

The substance of the contract is as follows:

"Now, Therefore, in consideration thereof, and for the purpose of settling all and any differences which exist between said parties in regard to said transaction, it is mutually agreed between the parties hereto as follows, to-wit:

"1. That the party of the first part herein is the owner of the real property and water right described in said note and mortgage and of the certificate of stock herein referred to.

"2. That said note and mortgage is at this date a valid and subsisting lien on said land and water right as described in said mortgage and certificate of stock.

"3. That the time of payment of said note is hereby extended to the 1st day of January, 1926, upon the following conditions:

"(a) That interest shall be paid on the principal sum of said note to the party of the second part annually from the date hereof at the rate of six per cent per annum.

"(b) That all taxes, water charges and other governmental expenses shall be paid on said premises before the same become delinquent.

"(c) That if interest, taxes, water bills and other governmental charges are not paid when due that the party of the second part herein may declare the whole sum of principal and accrued interest immediately due and payable at his option.

"(d) That should said premises be sold by the party of the first part at any time before January 1st, 1926, then the principal sum of said note and accrued interest thereon as hereinabove provided shall become immediately due and payable upon said sale.

"4. It is further agreed that all accrued and unpaid interest to the date hereof on said note is hereby cancelled and waived leaving due on said note and mortgage to the date hereof the principal sum of Twenty-two Hundred Dollars ($2200.00)."

We are unable to find in the contract a covenant to pay the note in question. We think to so construe the contract would be reading a clause into it which is not there.

However, we think the conditions upon which the interest was reduced and time of payment of the mortgage indebtedness extended was an undertaking—"(a) That interest shall be paid on the principal sum of said note to the party of the second part annually from the date hereof at the rate of six per cent per annum"—"(b) That all taxes, water charges and other governmental expenses shall be

paid on said premises before the same become delinquent.'' We are convinced here was an undertaking and promise by the Trust Company for which they became personally liable to pay the interest, taxes and assessments, but not more.

If we are correct in this the court erred in making the ninth finding, wherein the court found that by this contract the appellant became personally liable for the entire mortgage indebtedness. An examination of the trial court's findings of fact convinces us its ruling, that the Trust Company was personally liable for the entire mortgage indebtedness, was due to giving that construction to this contract. We think such construction was erroneous. This constitutes reversible error unless the record discloses the Trust Company otherwise assumed or became personally liable for the whole mortgage indebtedness. Respondent's brief suggests two other grounds in justification of the decision which we will discuss.

Respondent claims the extension alone amounted to a new obligation to pay on the part of the Trust Company, and cites *Pettengill v. Blackman*, 30 Ida. 241, 164 Pac. 358, 362. In that case this court said, ''The extension of time within which to pay the old obligation is as much a consideration and as much an extension of credit as the granting of a new loan.'' This is undoubtedly a correct statement of the law, but it has no application here unless the Trust Company at the time this contract was entered into had already assumed this indebtedness so that it was its obligation. In the Pettengill case and the later cases citing it, the debt involved was the obligation of the person procuring the extension. If at the time this contract was entered into the indebtedness in question had already in fact and law been assumed so that it then was the Trust Company's obligation the Pettengill case would be in point to the effect that the contract, without mentioning assumption, but only extending the time of payment of the old obligation, had the effect of a new loan direct. That not being the case here we do not think the Idaho cases cited are in point.

 A question here arises which is not treated in the briefs. We think the Trust Company obligated itself to pay the interest, taxes and assessments. This was a part of the mortgage obligation. May this be done without assuming all? Our independent research discloses no reason why it may not.

 The next question to be determined is the effect of the provisions of the deeds in the chain of title from Berr to the Trust Company. Berr's immediate grantee, Larsen, did not assume or agree to pay this mortgage. Larsen's grantee, Roberts, did assume and agree to pay the mortgage. It is claimed that Roberts was agent for the Trust Company, and the clause of assumption of this mortgage in that deed bound the Trust Company. Without reference to the relation of the grantee to the Trust Company, we find by the great weight of authority, and hold, that a clause of assumption of mortgage indebtedness in a deed accepted by a grantee does not of itself create personal liability in the grantee inuring to the benefit of the mortgagee unless the grantor in the deed had assumed payment of the mortgage and was personally liable therefor. (*Young Men's Christian Assn. of Portland v. Croft,* 34 Or. 106, 75 Am. St. 568, 55 Pac. 439; *Colorado Sav. Bank v. Bales,* 101 Kan. 100, 165 Pac. 843; *Andrews v. Robertson,* 177 Cal. 434, 170 Pac. 1129; *Wood v. Johnson,* 117 Minn. 267, 135 N. W. 746.)

In the briefs of appellant the judgment on the second cause of action is discussed, but in the view we take this is of no consequence, because we find the Boise Trust Company liable for interest, taxes and assessments, pursuant to the contract.

It therefore follows that the court erred in finding the Boise Trust Company liable *in personam* for any deficiency greater than the interest and taxes and assessments treated in the contract, which by the contract we think they promised to pay. In all other respects the findings and judgment are sustained by the record.

It is ordered that the judgment be reversed and remanded, with direction to enter findings and judgment in accordance herewith.

Costs to appellant.

Givens, C. J., and Budge, Lee and Varian, JJ., concur.

(May 21, 1930.)

ON PETITION FOR REHEARING.

McNAUGHTON, J.—On petition for rehearing in this case we have concluded that our directions to the trial court should be modified. The only provision in the judgment that was entered which was not in accord with our construction of the contract involved was the entry of a personal judgment against the defendant for the principal sum of the mortgage. We therefore direct that the cause be remanded to the district court with directions to modify the judgment by striking out the provision for personal judgment against the defendant for the principal of the mortgage indebtedness and attorney's fees, and otherwise affirming it, with costs to appellant.

Givens, C. J., and Budge, Lee and Varian, JJ., concur.