Argued June 28; affirmed July 31; rehearing denied
September 11, 1934

# HULIN *v.* VEATCH

(35 P. (2d) 253)

*H. E. Slattery,* of Eugene (Eugene V. Slattery, of Eugene, on the brief), for appellant.

*Lawrence T. Harris,* of Eugene (Harris, Smith & Bryson and William G. East, all of Eugene, on the brief), for respondent.

ROSSMAN, J. The complaint alleges the following: April 22, 1926, the plaintiff sold a parcel of real property which he owned, situated in Eugene, to Fred H. Lindsay and William Hargreaves at a price of $31,000, $20,000 of which was paid at the time of the execution of the deed and the balance of which was evidenced by the promissory note with which we are now concerned, executed by the two purchasers, together with their wives. This note, dated April 27, 1926, was payable three years after date and provided for 7 per cent interest payable semi-annually. At that time the parties agreed that this note should be secured by a mortgage covering the conveyed property, but, since Lindsay and Hargreaves contemplated borrowing $45,000 from the Union Savings & Loan Association with which to improve the property, it was further agreed that their $45,000 note should be secured by a first mortgage covering the property. April 26, 1926, they delivered to the Association their note for $45,000, and secured it with a mortgage upon the aforementioned property. May 5, 1926, Lindsay and Hargreaves, together with their wives, signed and delivered to the plaintiff, as agreed, a mortgage describing the aforementioned property as security for the payment of the $11,000 note. December 4, 1926, $385 interest

was paid upon the $11,000 note, and June 1, 1927, a like payment was made. November 29, 1927, Lindsay, Hargreaves, and their wives, executed and delivered to the defendant a deed conveying to him the aforementioned property, which recited that the conveyance was subject to the aforementioned first and second mortgages, but contained no provision requiring the defendant to assume or pay those mortgage debts. December 1, 1927, June 5, 1927, and December 28, 1928, the defendant paid three more installments of interest upon the $11,000 note. April 27, 1929, the $11,000 note became due. May 1, 1929, the plaintiff and the defendant, without the knowledge or consent of Hargreaves, Lindsay and their wives, or any of them, executed an instrument, the material parts of which are as follows:

"Whereas second party is the owner of the property described in said mortgage and is under obligation to pay said loan and the interest on the note secured thereby, the principal of which is now due and owing; And whereas 2nd party desires an extension of time thereon and the parties hereto have agreed upon an extension of time on said note and mortgage of one year, at an increased rate of 1 per cent per annum:

"Now Therefore it is hereby agreed, that in consideration of the agreement of and by 2nd party to pay interest on said note at the rate of 8 per cent per annum from date hereof, which 2nd party does hereby agree and promise to pay, until paid, first party does hereby grant unto second party an extension of time on said note of one year from date hereof, interest to be paid semi-annually, as originally provided in said note and hereby agree that no proceedings for the collection of said note or foreclosure of said mortgage shall be instituted during said term of one year provided the other terms of said note and mortgage shall be complied with."

Thereafter the defendant made six more payments of interest upon the note, and on August 11, 1931, paid

$500 upon the principal. Because of default in the payment of installments on the $45,000 note owned by the Union Savings & Loan Association, that corporation on May 27, 1932, commenced a suit to foreclose its mortgage. October 18, 1932, a decree of foreclosure was entered which also granted judgment against the makers of that note in the sum of $30,270.93. November 19, 1932, the sheriff sold the property to the Union Savings & Loan Association for $30,264. Later this sale was confirmed. October 4, 1932, the plaintiff instituted the present action.

The amended complaint, in alleging the manner in which the plaintiff claims that the defendant subjected himself to liability to pay the $11,000 note, avers the following:

"At all times up to about October 1, 1932, this plaintiff believed that the said defendant had assumed the payment of the said two mortgages by the terms of the said deed, and it was not until after he was served with a summons on September 30, 1932, in the hereinafter described foreclosure suit that plaintiff discovered the fact to be that defendant had not personally assumed and agreed to pay the said mortgage."

Further, it avers that on May 1, 1929, when the $11,000 note was overdue:

"The defendant stated unto plaintiff that he would pay the said note and mortgage, and that he owed the same to the plaintiff and requested an extension of one year's time. * * * Because of the fact that the defendant represented unto the plaintiff that he was under obligation to pay the said note and mortgage, and because of the fact that plaintiff believed the said representation to be true, and relied thereon"

plaintiff signed the extension agreement. Next, the complaint alleges that January 14, 1932, one A. E. Wheeler, agent of the plaintiff, in a letter, requested

payment of the note and that the defendant, in reply-
ing, stated: "Received your letter in regard to the
note which I owe Mr. Lester Hulin. I appreciate the
position and obligation that I am under to Mr. Hulin,
but  *  *  *  "; and that on the same day the de-
fendant sent a letter to the plaintiff, stating: "I re-
ceived a letter a few days ago from Mr. A. E. Wheeler
in regard to the note which I owe you."

The averments mentioned in the preceding para-
graph were stricken from the complaint upon the mo-
tion of the defendant. The propriety of that ruling,
and of the order which sustained the demurrer to the
complaint, are the subject-matter of the assignments
of error. We shall proceed as though the motion had
not been allowed.

It will be observed that the plaintiff depends upon
the following to sustain his contention that the defend-
ant has rendered himself liable to payment of the
$11,000 note: (1) The following recitals contained in
the agreement, signed May 1, 1929: "Whereas second
party  *  *  *  is under obligation to pay said loan
and the interest on the note secured thereby  *  *  *
and whereas second party desires an extension of time
*  *  *"; (2) the fact that the extension was granted;
(3) an estoppel predicated upon the representations
which the plaintiff avers the defendant made wherein
he declared himself under obligation to pay the note,
and the plaintiff's alleged reliance thereon when he
signed the extension agreement; and (4) the practical
construction which the parties placed upon the exten-
sion agreement as indicated by their correspondence
above quoted.

■ As we approach the problem presented by these
contentions, we deem it well to take note of some funda-
mental rules frequently mentioned by other courts

confronted with kindred problems. We quote from *Fitzgerald v. Flannagan,* (Iowa), 125 N. W. 995:

"The fact that the owner of land on which a mortgage has been placed by a prior owner makes payments thereon, or seeks an extension of the time in which to remove the lien, does not of itself establish a personal undertaking for its payment. He may be willing to pay it to save his investment in the land or in the hope of being able to resell it at a profit, but to enforce it as a personal obligation, there must be a valid contract express or implied to make the debt his own."

■ From *Frase v. Lee,* 152 Mo. App. 562 (134 S. W. 10), we quote:

"It is contended now by plaintiff that the payment of interest by Block, and his having written a letter to plaintiff in which he mentioned something about paying the debt was recognition by him of the deed of trust, and that he is, for that reason, now held for its payment, and therefore, if he paid interest upon the note, the running of the statute of limitations was suspended, and that his suit is in time. With this contention we do not agree. If Block did not agree at the time he purchased the land to pay the debt secured by the deed of trust, a subsequent agreement made by him with the holder of the note to be binding would have to be based upon a new consideration, so that even though he may have promised to pay the debt, and did, as a matter of fact, pay interest upon it, this would not constitute a contract upon his part to pay the principal of the note."

■ In *Macfarland v. Utz,* 175 Ill. App. 525, the court stated:

"By accepting a conveyance of the property subject to the trust deed Crouse did not assume the payment of the note secured by said trust deed, nor did the extension agreements entered into between Crouse and Nony Williams, the then holder of said note, on April 18, 1898, and April 18, 1900, whereby Crouse agreed to pay

the interest on said note, or the act of Crouse in there-after paying such interest, create a personal liability upon the part of Crouse to pay the principal of said note. Ray v. Lobdell, 213 Ill. 389; Scholten v. Barber, 217 Ill. 148.''

To like effect see *Crebbin v. Shinn,* 19 Colo. App. 302 (74 P. 795).

From *Holcomb v. Thompson,* 50 Kan. 598 (32 P. 1091), we quote:

''To create a personal liability on the part of a grantee in a deed to pay a prior mortgage or lien on the premises conveyed, the covenant or words used therein must clearly impart that the obligation was intended by the grantor, and knowingly assumed by the grantee.''

See to same effect *Chaffee v. Hawkins,* 89 Wash. 130 (154 P. 143), and *Allen v. Hoopes,* 189 Minn. 391 (249 N. W. 570). In *Hopper v. Calhoun,* 52 Kan. 703 (35 P. 816, 39 Am. St. Rep. 363), the court, after reiterating the rule last mentioned, held that the following words found in the grantee's deed, ''except a mortgage of $2,170, and one interest mortgage of $195, both mort-gages given to C. S. Calhoun, which mortgages of said second party accept and agree to pay'' did not subject the grantee to personal liability because ''the language used certainly is not clear''.

In *Fiske v. Tolman,* 124 Mass. 254 (26 Am. Rep. 659), the court stated:

''It is settled in this Commonwealth that, where land is conveyed in terms subject to a mortgage, the grantee does not undertake, or become bound by the mere acceptance of the deed, to pay the mortgage debt. * * * He is indeed interested in its payment, be-cause it is an incumbrance on the land of which he is the owner. * * * In the case at bar, there is no

such stipulation in the deed. The nominal consideration is $11,000, and the conveyance is made: 'Subject, however, to a mortgage—$7,000, which is part of the above-named consideration.' A promise to pay the mortgage debt cannot be inferred from the acceptance of the deed, on the ground that the clause contains this reference to the consideration. Taken by themselves, the words do not necessarily imply any obligation to be performed by the grantee. They are to be considered rather as additional words of recital  *   *   *.''

In *McFarland v. Melson,* 323 Mo. 977 (20 S. W. (2d) 63), where many contentions similar to those urged by our plaintiff were advanced, the court, in holding them ineffective to charge the grantee with personal liability, declared:

''The next contention is that the acts of the respondents in paying an installment of interest on the mortgage notes and in procuring the extension agreement are evidence of a contract to assume the debt in the first instance.  *   *   *  The question in the instant controversy is whether the respondents only bought subject to the two deeds of trust or whether they assumed them. In either event, it was natural for them to want to protect their investment in the equity of redemption, and we cannot see that the payment of interest (much under the value of the security) or seeking indulgence from the mortgagee has any tendency whatever to show they did *not* buy merely the equity of redemption. The better reasoned authorities sustain this view.  *   *   *  The appellant further contends that, by paying the interest and asking for more time, the respondents betrayed the appellant's intestate into granting the extension without the knowledge or consent of Schoonover, the maker, and that this had the effect of releasing him on the theory that he became a surety and the respondents principals when they purchased the land. From this it is argued the respondents are estopped to deny the assumption. The notes provided 'the makers  *   *   *  consent that the time of payment may be extended without notice;' but even

so, under Citizens' Bank of Senath v. Douglas, 178 Mo. App. 664, 687, 688, 161 S. W. 601, 607, perhaps Schoonover would have been released if respondents had *assumed* the debt in the beginning. If, however, they only bought subject to the mortgage (and we think the evidence so shows), Schoonover did not become a surety, and the argument fails. Where the extension is granted to a mere purchaser subject to the mortgage, it is said in 19 R. C. L., § 155, p. 383, the better rule is that the mortgagor or grantor is released only to the extent of the value of the land; and in this case the appellant has had the benefit of that by his foreclosure.''

■ From *Van Eman v. Mosing,* 36 Okl. 555 (129 P. 2, L. R. A. 1917C, 590), we quote:

''It is the law that the mere purchase of the equity of redemption in mortgaged lands does not make the purchaser liable for the payment of the mortgage debt. No personal obligation rests upon him to pay it unless by agreement he assumes the debt, or makes the debt his own, by retaining the amount of it out of the purchase price or otherwise.''

■ In *Little v. Boise Trust Co.,* 49 Idaho, 259 (287 P. 954), the defendant was the grantee of property subject to plaintiff's mortgage. The court, in holding that the defendant did not assume the mortgage debt, held:

''We think the trust company obligated itself to pay the interest, taxes, and assessments. This was a part of the mortgage obligation. May this be done without assuming all? Our independent research discloses no reason why it may not.''

From *Elliott v. Sackett,* 108 U. S. 132 (28 S. Ct. 375, 27 L. Ed. 678), we quote:

''The fact that Elliott made two payments of the interest on the incumbrance is not inconsistent with his not having assumed the payment of the incumbrance. As owner of the property subject to the incumbrance, and desirous of retaining it so long as there was

any value in the equity of redemption, he would naturally pay the interest to save a foreclosure.''

In *Allen v. Hoopes,* 189 Minn. 391 (249 N. W. 570), wherein the court was confronted with facts substantially similar to those before us, it declared:

''An agreement to pay interest and payment thereof does not impose liability to pay the principal. * * * Defendant having taken a deed imposing no personal liability on him to pay the mortgage, and having in the extension agreements carefully refrained from making any distinct agreement to assume or pay the mortgage debt, the complaint fails to state facts sufficient to constitute any assumption or agreement by him to assume the payment of the debt. It is urged that the provision of the extension agreements, that the note 'when due, to be paid in gold coin * * * with current exchange on New York,' and the further provisions thereof that nothing therein shall impair plaintiff's security or lien on the real estate, nor affect or impair any rights or powers which she may have under said note and mortgage, constitute an agreement to assume and pay the mortgage debt. These provisions are followed by the further provision that all the terms and conditions of the mortgage, except as to time of payment of said principal sum of $1,200 shall be and remain in full force and effect. * * * It is urged that by these agreements the plaintiff may have released her rights to recover from the mortgagors. In this state, if these extension agreements were made without the knowledge and consent of the mortgagors, the mortgagors were released from personal liability to the extent of the value of the mortgaged property. Travers v. Dorr, 60 Minn. 173, 62 N. W. 269; Citizens' State Bank of Peters, 179 Minn. 330, 229 N. W. 129. The complaint does not allege the value of the property, and is silent as to whether the mortgagors consented to the extensions. Plaintiff is presumed, on the record here presented, to have known the effect of the extension agreements on her rights.''

From *Metropolitan Bank v. St. Louis Dispatch Co.*, 149 U. S. 436 (13 S. Ct. 944, 37 L. Ed. 799), we quote:

"It is admitted that there was no express or direct promise on the part of the defendant to pay the mortgage debt, and it cannot be held that the mere purchase of premises subject to a mortgage renders the purchaser personally liable to the mortgagee, as having assumed to pay it, or that the mere payment of interest in itself imposes that liability."

See also *Hurst v. Merrifield*, 144 Or. 78 (23 P. (2d) 124), and *Walker v. Goldsmith*, 7 Or. 161.

■ The principles mentioned and applied in the above decisions we deem well established. Their application to the facts alleged in the complaint demands a conclusion that the defendant's purchase of the property subject to the $11,000 mortgage, his payment of several interest installments, his payment of $500 upon the principal, his request for an extension of time for the payment of the note, the plaintiff's grant of that request, and the defendant's promise to pay 8 per cent interest upon the unpaid balance did not subject him to liability upon the principal of the debt.

■ The question next presents itself whether the following language found in the extension agreement bound defendant to liability upon the $11,000 note:

"Whereas second party is the owner of the property described in said mortgage and is under obligation to pay said loan and the interest on the note secured thereby."

In order to understand what the parties meant by their above-quoted language, it is necessary that we should endeavor to place ourselves in their position. When the document was under preparation the defendant owned this property, subject as it was to the mortgage debt. His deed, according to the complaint, had

been "duly recorded". The same pleading admits that the plaintiff knew that the defendant owned the property and that he had acquired title by deed of conveyance. From the fact that the complaint avers "that at all times up to about October 1, 1932, this plaintiff believed that the said defendant had assumed the payment of the said two mortgages by the terms of the said deed", we believe that a conclusion is warranted that the plaintiff was aware of the existence of defendant's deed from the time of its delivery to him. This deed, as we have seen, did not impose upon the defendant personal liability for the mortgage debt. Since the plaintiff concedes actual knowledge of the existence of defendant's deed, he cannot escape from the effects which that knowledge imputes by availing himself of the rule, quoted in his brief:

"The record of subsequent conveyances is not constructive notice to the prior mortgagee."

The language which the plaintiff quoted is taken from 23 R. C. L., Records, p. 213, § 73, from which we further quote:

"As a mortgage is a lien, and creates an incumbrance alike on all parts of the land subject to it, no subsequent change in the ownership of the mortgaged premises of which he is ignorant can in any degree limit his original rights."

The other three authorities cited by the plaintiff are to like effect. But the complaint does not avow ignorance of the defendant's deed; it admits knowledge. It does not allege that the defendant misinformed the plaintiff concerning the deed's import, nor persuaded him not to examine its contents. No fiduciary relationship existed between the two persons. In the absence of explanation, we believe that this is a

proper situation in which to hold that it was the plaintiff's duty to examine defendant's deed, and to charge him with the information which he would have secured had he done so. See *Hoy v. Bramhall,* 19 N. J. Eq. 563 (97 Am. Dec. 687), and Jones on Mortgages (8th Ed.), § 895. Having imputed to the plaintiff knowledge of the fact that the defendant's deed did not charge him with payment of the $11,000 note, let us determine the meaning of the above-quoted words.

14, 15. Since the defendant owned the property incumbered with the mortgage held by the plaintiff, he was obliged to pay the mortgage debt if he desired to free his property from it. While he was not liable upon the note, his property was. Thus, this item of his assets was lessened in value to the extent of the mortgage debt. The coercive power of this mortgage to compel the defendant to pay this debt was very likely the factor which caused the parties to describe the defendant as ''under obligation to pay said loan and the interest on the note secured thereby''. It is our belief that the parties did not intend their language to mean that the defendant was personally liable to pay the debt. Other courts have entertained a similar conception of like language: *Macfarland v. Utz,* 175 Ill. App. 525, and *Curtis v. Holee,* 184 Cal. 726 (195 P. 395, 18 A. L. R. 1024). Moreover, it will be observed that the language upon which the plaintiff relies are words of recital and not of covenant. Such words in a mortgage ''while having a material bearing on the construction of the instrument, do not have the force of contractual stipulations'': 41 C. J., Mortgages, § 776, p. 729.

From *Williams v. Barkley,* 165 N. Y. 48 (58 N. E. 765), we quote:

''Where the recital in an agreement is so inconsistent with the covenant or promise that they cannot be

harmonized, the latter, if unambiguous, must prevail, because it is the most important. The promise is what the parties agreed to do, and hence is the operative part of the instrument, while the recital states what led up to the promise and gives the inducement for making it. When the explanation of the reason for the promise is at variance with the promise itself, the latter, if clear and unambiguous, must prevail, as it is the transaction between the parties. The rule governing the subject is well stated in a late English case as follows: 'If the recitals are clear and the operative part is ambiguous, the recitals govern the construction. If the recitals are ambiguous and the operative part is clear, the operative part must prevail. If both the recitals and the operative part are clear, but they are inconsistent with each other, the operative part is to be preferred.' (Ex Parte Dawes L. R. 17 Q. B. Div. 275, 286. See also Young v. Smith, L. R. (1 Eq. Cas.) 180, 183; Bailey v. Lloyd, 5 Russ. 330, 344. Whatever may be said of the recitals in the contract under consideration, the operative part is clear and must, therefore, prevail under the rule adopted.''

For an application of this rule to the recitals of a deed concerning a mortgage, see *Miner v. Terry, Reader and Geere,* 6 Howard Prac. (N. Y.) 208.

It will be observed that while the words of recital describe the defendant as being the owner of the property concerning which the parties were contracting, and as under obligation to pay the loan, the only agreements which they effected bound the defendant "to pay interest on said note at the rate of 8 per cent per annum", and bound the plaintiff to grant "an extension of time on said note for one year". Even the plaintiff does not contend that the operative parts of the contract are ambiguous or impose upon the defendant an obligation to pay the mortgage debt. Had the plaintiff intended to effect such a result, or had the

defendant's grantors desired to impose upon him the duty to discharge that debt, they could readily have done so by the use of a few simple words. But the words are missing. We believe that it is clear that the extension agreement does not bind the defendant to pay plaintiff's note.

16. The plaintiff argues that his complaint contains allegations showing that the defendant is estopped from denying liability to discharge the mortgage debt. He argues that the averments which declare ''the defendant stated unto the plaintiff that he was under obligation to pay said note and mortgage  *  *  * which fact was believed and relied upon by the plaintiff; and that, in reliance upon the defendant's said statement that he was under obligation to pay the said note and mortgage, the plaintiff gave unto the said defendant an extension of time  *  *  *'' creates the estoppel. It is evident that the defendant cannot be estopped unless he represented under appropriate circumstances that his deed, some other instrument, or some contractual obligation bound him to pay the mortgage debt. The complaint avers no such representation, nor does it aver that the defendant made any representation concerning the contents of his deed. As we have seen, the plaintiff had knowledge of the defendant's deed, yet he does not allege that he understood the representation, upon which he relies, to mean that the deed contained a clause requiring the defendant to pay the mortgage debt. We again express the opinion that a grantee's statement that he is ''under obligation to pay said note and mortgage'' does not necessarily mean that he has assumed the debt. In *Myers v. Olds,* 121 Or. 249 (252 P. 842), we held that one who seeks to invoke an estoppel ''must show that he exercised good faith and due diligence in endeavor-

ing to ascertain the truth''. The defendant's recorded deed was always available as a source of information. Since the plaintiff does not contend that the defendant either misrepresented the contents of his deed nor that he inferred from the alleged representation that the defendant had assumed the mortgage debt, we believe that no estoppel is available to him.

■ The averment that the defendant told the plaintiff before the time extension agreement was signed ''that he would pay the said note and mortgage'' avers nothing that can help the plaintiff. No such provision was inserted into the document then under contemplation, and since the writing prepared at the conclusion of the negotiations is deemed a memorial of all their agreements, the parol evidence rule would exclude any evidence offered in support of the allegation: Oregon Code 1930, § 9-212; *John Deere Plow Co. v. Silver Mfg. Co.,* 118 Or. 62 (215 P. 743, 245 P. 1083).

■ The contention that the parties by their alleged interchange of letters construed the language of the time extension agreement to mean that the defendant had bound himself to pay the mortgage debt, encounters the difficulty that that instrument contains no operative part susceptible to such a construction. We believe that the meaning of that document is free from uncertainty. Doubt cannot be imported into an unambiguous writing by resort to extraneous evidence.

The above disposes of every contention advanced by the plaintiff. We have not discussed every one of the numerous authorities cited in the plaintiff's brief, but they have received careful attention.

The judgment of the circuit court is affirmed.

RAND, C. J., and BELT and KELLY, JJ., concur.