Argued April 15; affirmed June 2, 1936

# BUTLER & THOMPSON CO. *v.* HOSTETTLER ET AL.

(58 P. (2d) 236)

C. F. *Pruess,* of Grants Pass, and *G. M. Roberts,* of Medford, for appellant.

*William M. Briggs,* of Ashland, for respondent.

BAILEY, J.   This appeal involves two suits originally instituted to foreclose two separate mortgages on two different adjoining tracts of land, which suits were consolidated in the circuit court.

Butler & Thompson Co., a corporation, is the plaintiff in both suits and as originally instituted the suits named the following defendants: John Hostettler, who is appellant here; J. J. Deakin, L. A. Murphy and Alice

G. Murphy, his wife. On request of the defendant Hostettler, G. S. Butler and Alice B. Butler, his wife, were brought in as defendants in one of the suits. The first of these suits concerned the foreclosure of a $3,000 purchase-money mortgage on the northerly 50½ feet of lots 21, 22 and 23 in block O of Railroad Addition to the city of Ashland. The second of the suits involved the foreclosure of a mortgage given as security for a note originally made in the sum of $7,500, on which there remained due $6,898.06 principal and $150 paid as taxes. It was in this second suit that the Butlers were made defendants. All the parties originally made defendants defaulted, except John Hostettler, who filed an answer to the complaint in the second suit only, in which answer he asked for affirmative relief based on alleged fraud of the defendant G. S. Butler and others, which will hereinafter be stated in detail. From a decree in favor of the plaintiff the defendant Hostettler has appealed.

The facts in the case are substantially as follows: On September 19, 1930, Charles L. Wimer was the owner of lots 22 and 23 and the northerly 50½ feet of lot 21 in block O of Railroad Addition to the city of Ashland. At that time there was a mortgage on this and other property, originally made in the sum of $7,500, which had been reduced to approximately $7,200. Situated on the northerly 50½ feet of these three lots was a garage. On or about the date last mentioned, Wimer and his wife conveyed to William M. Briggs said lots 22 and 23, except the northerly 50½ feet thereof, "subject to a mortgage indebtedness in favor of the First National Bank of Ashland, in the sum of $7,236, which sum includes the interest thereon. It is understood that said mortgage covers not only the property herein conveyed but other adjacent property lying to the north

thereof, title to which is retained by the grantors but the grantee herein does hereby agree to save the grantors harmless from the payment of all, or any portion of, said mortgage indebtedness, and the grantee further agrees that he will, within 12 months from the date hereof, procure a release of the said mortgage as to the lands included therein which are retained by the grantors". As a consideration for this conveyance and the transfer to him of the personal property in the building on said property, Briggs, according to his testimony, transferred property of a value of approximately $1,500 and paid $300 or $400 in cash.

On October 28 of the same year, Briggs conveyed to G. S. Butler, one of the defendants in this suit, an undivided one-third interest in and to the land so acquired by Briggs, which conveyance to Butler contained the following provision, "subject to the encumbrance, conditions and obligations of that certain deed to William M. Briggs, from Charles L. Wimer and wife", and referred to the volume and page of the record of deeds where the same was recorded. As a consideration for this conveyance to him, Butler paid into the building account the sum of $600, which was to be used and was used in repair and upkeep of the building on such property.

Butler purchased from the First National Bank on October 31, 1930, the note, originally made for $7,500, for $7,052.21, which in addition to the balance due on the note included $150 as taxes on the mortgaged property paid by the bank. The note was transferred to Butler with the following indorsement of the bank, by its cashier: "Assigned Oct. 31, 1930, for value received, to G. S. Butler, without recourse." At the same time the bank assigned and transferred to Butler the mort-

gage given as security for the payment of said note, which assignment was on the following day filed for record. On December 10 of the same year, Butler released from the lien of said mortgage all the property covered thereby, except the part which had previously been conveyed by Wimer and his wife to Briggs, in which latter tract Butler had acquired an undivided one-third interest. This partial release was filed for record February 24, 1931, and recited, among other matters, "it being understood that said mortgage shall remain in full force and effect as to said portion of said mortgaged property conveyed to said Wm. M. Briggs as aforesaid". The property not released from the lien of the mortgage included all of lots 22 and 23, except the northerly 50½ feet of the same.

. Wimer and his wife on March 10, 1931, conveyed to Briggs the northerly 50½ feet (sometimes referred to as 50 feet) of lots 21, 22 and 23 in said block O, and there was executed and delivered by Briggs to Wimer a purchase-money mortgage for $3,000, covering the real property so conveyed, to secure the payment of the $3,000 note executed at the same time by Briggs and payable to Wimer. Briggs on April 6, 1931, conveyed to Butler an undivided one-third interest in the land last acquired by him from Wimer, subject to the $3,000 purchase-money mortgage given by Briggs to Wimer. Later, after the defendant Hostettler had become interested in this property, Wimer sold, indorsed and delivered to Butler, on September 3, 1931, the $3,000 note and assigned to him the mortgage securing the payment of such note.

On January 17, 1931, the Western Loan & Building Company, a corporation, entered into a contract with Briggs whereby it agreed to sell to him lot 21 in said

block O, with the exception of the northerly 50 (50½) feet thereof, for the sum of $4,400, on which contract there was no initial payment and the purchase price was to be paid at the rate of $52.80 per month beginning February 16, 1931.

E. D. Briggs, father of William M. Briggs, practicing law with him at Ashland under the firm name of Briggs & Briggs, and J. J. Deakin were both interested in all the property hereinabove described, with the possible exception of the tract being purchased on contract from Western Loan & Building Company, but their interest was not shown of record.

We now direct attention to the transactions which were consummated on or about May 22, 1931. At that time Hostettler was the owner of a farm in Josephine county, consisting of approximately 225 acres of land, 70 or 80 of which were under cultivation, and according to the deed for this land, which was on the date last above mentioned given by Hostettler to the Murphys, there was an existing mortgage to the Federal Land Bank of Spokane, on which there was a balance due of approximately $8,000. The Murphys were the owners of approximately 55 acres of farm land in Jackson county, of which 10 acres were in clover, 32 acres in alfalfa and 8 acres in woodland. Against this property was a mortgage lien of approximately $6,000 and "the bond rights of the Medford Irrigation District". The Ashland property which had been acquired by Briggs by deed, and a third interest in which had been transferred to Butler, and the property being purchased on contract by Briggs, were all improved by two-story buildings, returning a total rental of approximately $280 a month.

After some negotiations among the Murphys, Hostettler, Briggs, Butler and Deakin, Hostettler conveyed his farm land to the Murphys, subject to the unpaid balance of some $8,000 on a mortgage, and assumed certain taxes, mortgage on the livestock and certain balances on personal property, in the sum of $1,860. The Murphys transferred their 55 acres, subject to the incumbrances mentioned, to Butler, who advanced the $1,860 to Hostettler, taking Hostettler's note for that amount, and Butler agreed to disburse the amount thereof in payment of the obligations so assumed by Hostettler.

On May 22, 1931, there was drawn up a document designated "Memorandum of Business Transaction", which contained the following recitals:

"G. S. Butler and others own lots 21, 22 and 23 of block O of the Railroad Addition to the city of Ashland, Jackson county, Oregon. A one-half interest in said property has been bargained to L. A. Murphy and John Hostettler.

"It is agreed by all parties that a corporation shall be formed to avoid the complications that may arise by so many parties being interested in the property. It is agreed that a corporation shall be formed, the capital stock of which shall be $65,000. Briggs & Briggs are to prepare the articles of incorporation free of all expenses, except the actual expenses incident thereto. When incorporated, stock shall be issued in the sum of $65,000. $32,500 of the stock shall be issued, fully paid, to G. S. Butler, William M. Briggs and E. D. Briggs; $300 to J. J. Deakin; $14,500 to John Hostettler; and $17,700 to Mr. and Mrs. L. A. Murphy."

This document then refers to the advancement of $1,860 to be made by Butler, and states that Hostettler is to leave with Butler his stock as collateral security for payment of the sum so advanced, and that the

money advanced shall be paid on or before 18 months. It is then set out how this $1,860 shall be disbursed by Butler. The instrument concludes by stating that inasmuch as the Murphys and Hostettler may not be present at the time of formation of the corporation, E. D. Briggs is authorized to subscribe for the amount of stock to which they are entitled.

Butler, then the owner, by assignment, of the two mortgages against the Ashland property, on November 20, 1931, wrote a letter addressed to Briggs, Hostettler, Deakin, Murphy and himself, stating that:

"The interest on the Wimer Mercantile building is in default and on November 1 there was interest for seven months due, which interest is payable monthly with $75 on the principal, which was $7,337.81 when last payment was made.

"This is to advise you, that there is unpaid taxes besides this default in interest and if same is not settled without delay I shall have to start foreclosure for my own protection, and in that case there will be additional expense to holders. This notice does not include the Wimer garage. It will soon be short on interest and property tax.

"Please give this your early attention, and oblige."

On December 24, 1931, payment of $250 was made by Hostettler to Butler. Hostettler contends that this amount was paid on the $1,860 note held by Butler, and Butler claims that it was paid, or at least part of it was paid to apply on the taxes and interest on mortgages against the property.

No corporation was formed. Briggs and Butler and the latter's wife on May 12, 1932, executed and delivered to Hostettler a deed for a one hundred forty-five six-hundred-fiftieths (145/650) interest as tenant in common in and to the real and personal property known

as the Commercial Center buildings, the real property being described as all of said lots 21, 22 and 23, and the personal property described as all the personal property belonging to or connected with said Commercial Center buildings. The deed further provided: "The above real property being subject to an incumbrance in favor of the Western Loan & Building Company of Salt Lake, Utah, and in favor of G. S. Butler in the aggregate amount of $15,000. Said property is further subject to any and all taxes and assessments due or to become due thereon." Accompanying the deed was a letter from the younger Briggs stating that it was considered advisable at that time, in view of corporation fees and excise taxes, not to incorporate, but that incorporation would be effected if desired. It was further explained that the interest conveyed was the proportionate amount which Hostettler would receive in the contemplated $65,000 corporation. This deed was accepted by Hostettler and recorded on May 31, 1932.

On May 22, 1932, Hostettler transferred to Butler certain stocks or bonds and was allowed a $1,500 credit on his note of $1,860, to Butler, for balance of which he gave Butler a new note for $360, payable on or before one year from date.

William M. Briggs and his wife on December 29, 1933, quit claimed to Butler their right, title and interest in and to lots 21, 22 and 23 in block O, and before the trial of these suits the defendants Deakin and the Murphys relinquished to Butler their right in and to said property.

On January 6, 1934, Butler indorsed and transferred the two notes and assigned the two mortgages to Butler & Thompson Co., the plaintiff in the foreclosure suits.

These two suits were instituted on January 11, 1934, and the complaints therein are in the ordinary form for suits in foreclosure. The answer and cross-complaint of the defendant Hostettler in the suit foreclosing the $7,500 mortgage were not filed until February, 1935. Approximately one year prior to the filing of this answer and after the institution of the suits, Hostettler through one of his attorneys had demanded from the defendant Butler a rescission of the agreement of May 22, 1931.

In his answer the defendant Hostettler first makes general and specific denials of the allegations in the complaint and then sets forth what he denominates three further and separate answers and defenses, the first of which is to the effect that the plaintiff has not done or offered to do equity and has not come into court with clean hands, for the reasons and upon the grounds stated in defendant's further cross-complaint, which is incorporated in the first defense by reference only. The second of these defenses is that the plaintiff is not the real party in interest; that Butler is the real party in interest; that said Butler had acquired, paid off and released the $7,500 mortgage; that said mortgage had by operation of law been extinguished as a lien against the property; and that the plaintiff is not a holder in due course of the note involved in the suit.

In the third defense Hostettler sets forth the transaction between himself, the Murphys and the other parties involved in the negotiations of May 22, 1931, and alleges that in consideration of Hostettler's transferring his property to the Murphys, Butler and William M. Briggs agreed that Hostettler "was to be kept safe and harmless from any and all claims and indebtedness against said real and personal property"; that

Butler and Briggs fixed the value of said real and personal property and their interest therein at $50,000; and that in order to induce Hostettler to enter into said transaction, Butler and Briggs made certain misrepresentations and concealed certain facts from him, which representations are set forth as follows: (1) that they represented that they were the sole owners in fee simple of said property and would transfer to him an interest therein equivalent to $14,500; that the said Butler and Briggs did not own the title in fee simple but were purchasing some of the property from Western Loan & Building Company; that later, on May 12, 1932, Hostettler, upon the representation that Butler and Briggs would save him harmless, accepted a deed for a 145/650 interest in said property, and that Butler and Briggs had failed to save him harmless; (2) that Butler and Briggs had represented to him that they had taken up and released the mortgages involved in the foreclosure suits and that he would be saved harmless therefrom; that said Butler had in fact taken up only one of such mortgages (referring to the one for $7,500); that he had not, on May 22, 1931, acquired the $3,000 mortgage; and that this mortgage was later acquired by Butler, whose assignee, plaintiff herein, now seeks to foreclose both mortgages, with full knowledge of the facts and by inducement of Butler and Briggs; (3) that Butler and Briggs had led him to believe that the Ashland property was "valuable income property, self-sustaining, and that the income therefrom would be sufficient to pay all expenses, taxes and assessments, upkeep and all advancements made in connection therewith, and that the property was attractive and would be easily salable within a short time"; and that Hostettler would not be obligated to pay any money in connection therewith, but

would receive a regular monthly income from the property, whereas the income was not as represented, nor was the property valuable or salable; and (4) that Butler and Briggs led the defendant to believe that they would personally operate and manage the buildings on the property, which implication of misrepresentation is apparently abandoned by Hostettler.

The following specified charge is an allegation that Butler and Briggs concealed from Hostettler the disadvantages to him in the exchange of property, the fact that lot 21 was being purchased on contract, that Wimer owned and held a mortgage on the property, the purposes of Butler to enforce the covenants of the two mortgages against the property and to foreclose said mortgages, the inability of Butler and Briggs to manage the property efficiently, and other matters not necessary here to enumerate. Then follows general allegation as to Hostettler's believing and relying upon the representations so made to him.

In his reply to the answer of the defendant Butler, Hostettler alleges facts closely similar to those set up in his original answer to the complaint, charges Butler and Briggs with acting in a fiduciary capacity as to himself, and further alleges that "the $15,000 incumbrances referred to and alleged in paragraph XIV not as mortgage incumbrances, but representing advancements made to take up incumbrances against said property, were to be paid from the rents and profits from the rental and operation and sale of said Commercial Center buildings, and said incumbrances were not to be enforced as mortgages or otherwise against said building or against this answering defendant."

■ We have given careful attention to Hostettler's contention that the transaction whereby he acquired an

interest in the Ashland property was induced by fraudulent representation and concealment. His principal contentions are that he did not know that some of this property was being purchased on contract or that there were incumbrances against it; and that it was represented to him that the property was self-sustaining, producing a monthly income in which he would share. The trial court found against Hostettler on these various charges of fraud, misrepresentation and concealment, and we concur in the findings, without here setting forth in further detail the facts concerning the transaction. The burden of proof was upon Hostettler to substantiate these charges, and we believe that he has not established them. When he alleges in his answer that Butler and Briggs represented the value of the property as $50,000 and the agreement shows that the capital stock of the contemplated corporation was to be $65,000, there is reason to believe that the difference between the two amounts represents incumbrances against the property.

■ In his answer to the complaint Hostettler alleges that Butler and Briggs represented that Butler had taken up, paid and released the mortgages. As a witness, however, he testified that he did not know that there were any mortgages against the property at all at the time of the transaction. Then again, we have in his reply to Butler's answer his statement that it was represented to him that the incumbrances of $15,000 against the property were to be paid out of income from the property. (In regard to this allegation we are not overlooking his contention that he did not know that it was set out in his reply.) We have also the definite admission of Hostettler that he received Butler's letter of November 21, 1931, notifying him of these incumbrances, the fact that he paid in December of that year

$250, either on his indebtedness of $1,860 to Butler or to be applied on the charges against the Ashland property, the further fact that he accepted and recorded in May, 1932, a deed for his proportionate undivided interest in such property, and that no definite, affirmative action was taken by him until after this suit was instituted. The "Memorandum of Business Transaction" did not purport to contain all the terms of the agreement between the parties and was not treated by them as constituting the entire contract.

There seems to be no real contention on Hostettler's part that there was any misrepresentation as to the income from the Ashland property at the time the transaction was consummated, or that there was thereafter any mismanagement of the property. In addition, we have the fact that the mortgage existing on his farm when he conveyed to the Murphys had been foreclosed prior to the trial of this suit.

Hostettler is pictured as inexperienced and relying entirely upon the advice of Butler, William M. Briggs, E. D. Briggs and Deakin. The record discloses that he had at one time or another owned or was interested in lands in Canada, Washington, Oregon and California. He had made numerous loans secured by mortgages on real property and had bought, sold and exchanged farms and city property. There is no evidence in the record that Butler, the senior or younger Briggs or Deakin was acting in a fiduciary or confidential relation toward Hostettler in this transaction.

The evidence in the case, both documentary and oral, leads us to conclude that Hostettler did know of the incumbrances against the property and that he did know that part of the property was being purchased on contract.

■ Neither Briggs, in the deed to him from Wimer, nor Butler, in the deed to him from Briggs, assumed or agreed to pay the $7,500 mortgage. An assumption of payment of this mortgage was not a part of the consideration which Briggs agreed to pay Wimer for the conveyance of lots 22 and 23. Such conveyance was subject to the mortgage and Briggs as grantee agreed to save his grantors harmless in the payment of all or any part of said mortgage indebtedness. He further agreed to procure within 12 months from the date of conveyance a release of all the land covered by the said mortgage and not included in the conveyance to him. In the partial release of said mortgage given by Butler after he had acquired the mortgage by assignment it was specifically provided that the property acquired by Briggs from Wimer was still subject to the mortgage. These instruments were on record at the time Hostettler acquired an interest in lots 21, 22 and 23. The wording of the deed to Briggs, in connection with the partial release of the mortgage, negatives any presumption that it was intended by the contract between Wimer and Briggs that the $7,500 mortgage was to be paid off and satisfied, as far, at least, as it relates to the land conveyed to Briggs.

We are not here concerned with any controversy between Wimer and Briggs. Had Briggs failed to comply with the provisions contained in the deed to him as to protecting Wimer or releasing the land retained by Wimer from the lien of the mortgage, a different question would be presented, and several of the cases cited by the appellant to sustain the contention that the obligation rested upon Briggs and Butler to pay and satisfy this mortgage might be applicable to that question. The amount which Briggs paid to Wimer for conveyance to

him and the amount paid by Butler to Briggs in nowise indicate that either Briggs or Butler obligated himself to pay the mortgage indebtedness as part of the consideration for the purchase of the property. There was no obligation upon either Briggs or Butler to pay the mortgage indebtedness and relieve from the mortgage lien the property first conveyed to Briggs by Wimer, and the assignment of this mortgage to Butler by the bank does not amount to a payment of the indebtedness by Butler: *Hulin v. Veatch,* 148 Or. 119 (35 P. (2d) 253, 94 A. L. R. 1319).

■ The purchase of the two mortgages by Butler while he was the owner of an undivided interest in the mortgaged property did not extinguish the mortgages or result in a merger. The intention of the parties was that the lien of the mortgages should not merge with the legal title of Butler. He was the owner of only a small interest in the property at the time he acquired the mortgages, and had he intended to extinguish the incumbrance created by them it would have been paid off and satisfied. It was to Butler's interest to preserve these liens: *Smith v. Allen,* 144 Or. 261 (24 P. (2d) 1043); *Barber v. Hartley,* 136 Or. 210 (298 P. 226); *Watson v. Dundee M. & T. I. Co.,* 12 Or. 474 (8 P. 548).

It is not contended by the plaintiff that it is a bona fide purchaser and holder of the notes upon which the suits are based. It is admitted by plaintiff and by the defendants Butler that all the stock in the plaintiff corporation, with the exception of one or two shares, is owned by Mr. and Mrs. Butler. It is further admitted that the notes were transferred and the mortgages assigned to the plaintiff in order that suit might be brought on them. It is also conceded by the plaintiff

that any defense which would be available against Butler individually is available as a defense by Hostettler against the plaintiff corporation.

■ As heretofore noted, Hostettler filed no answer to the complaint in the suit to foreclose the $3,000 mortgage, and he does not here claim that either of the notes when given did not represent a bona fide transaction or that the mortgages given to secure the payment of said notes were irregular. Hostettler, however, does contend that if Butler is entitled to any recovery against him or his interest in the land, such recovery should be obtained in an action for contribution and not in a suit to foreclose the mortgages. The claim that Butler had paid the indebtedness for which the mortgages were given as security has hereinbefore been disposed of contrary to Hostettler's contention. We have further pointed out that there was no merger of the lien of said mortgages with the ownership of the property held by Butler. Therefore, the lien of the mortgages continued, unaffected by the transfer of the mortgages to Butler.

The defendant Hostettler was given ample opportunity to contribute to Butler, on the indebtedness represented by the two notes, an amount proportionate to his interest in the land. Had he done so, the lien of these mortgages would have been satisfied, inasmuch as Butler owned the remainder of the undivided interest in the land. Hostettler, however, refused to contribute to the payment of the incumbrances and sought to defeat the lien of the mortgages. When he was unsuccessful in obtaining contribution from Hostettler, Butler or his assignee had a right to foreclose these mortgages, as would any other mortgagee, and in such foreclosure proceedings would be entitled to attorney's fees

582

and costs: *Scanlon v. Parish,* 85 Conn. 379 (82 Atl. 969);
*Blodgett v. Hildreth,* 8 Allen (Mass.) 186; *Barker v.
Flood,* 103 Mass. 474; *Magruder v. Johnston* (Texas,
not in state reports), 233 S. W. 665; 62 C. J. 473, § 110.

■ The decree of the circuit court is to the effect that
plaintiff have judgment against Butler and his wife
and Hostettler for the amount of each of the notes sued
upon, that the mortgaged property be sold to satisfy
the judgments, and "that plaintiff have no deficiency
judgment against the defendants or either of them in
the matter of the foreclosure of said mortgage". This
decree in effect limits the amount of recovery against
Butler and his wife and Hostettler on the notes to the
proceeds of sale of the mortgaged properties. These
defendants were in no way liable personally for the in-
debtedness, unless Butler be liable on his indorsement
to the plaintiff. It might have been preferable to omit
from the decree any reference to a judgment against
these defendants and merely provide for a recovery
by the plaintiff of the amount of its claim and a fore-
closure of the mortgages. But since the meaning of the
decree is apparent we see no reason for holding that
any reversible error was committed in this respect.

■ The decree of the court further provided that Hos-
tettler owned an interest described as 145/650, in the
real property, that defendant Butler owned 505/650,
and that "it is specifically declared and decreed, and
the foregoing provisions of the decree shall be so con-
strued, that the said John Hostettler and the said
G. S. Butler are tenants in common in the said real
property in the proportionate interests hereinbefore
set forth, and that the judgment decree in each of the
consolidated cases and on each of said mortgages shall
be a judgment and decree against the said John Hos-

tettler for his 145/650 interest in the said lands and his like liability for said mortgages, and a like liability shall run against G. S. Butler and against his 505/650 interest in said lands, and in case either of said parties shall see fit to redeem from both or either of said mortgages he may redeem by paying in like proportions as hereinbefore set forth, together with his like proportion of any accrued interest or expenses of sale''. This decree is as favorable to Hostettler as he is entitled to ask and gives him the right to redeem from foreclosure sale and preserve his interest in the real property, if he so desires.

The decree appealed from is affirmed, neither party to recover costs in this court.

CAMPBELL, C. J., and BEAN and RAND, JJ., concur.