288 F.2d 32
 STATE OF OREGON ex rel. HOWARD COOPER CORPORATION, and Howard Cooper Corporation, an Oregon Corporation, Appellant,
v.
ST. PAUL MERCURY INDEMNITY COMPANY, and St. Paul Fire & Marine Insurance Company, Appellees.
 No. 16926.
 United States Court of Appeals Ninth Circuit.
 March 2, 1961.
 
 Donald H. Joyce, Portland, Or., for appellant.
 Hollister & Thomas, William F. Thomas, Portland, Or., San Francisco, Cal., for appellees.
 Before ORR, HAMLIN and JERTBERG, Circuit Judges.
 HAMLIN, Circuit Judge.
 
 
 1
 Howard Cooper Corporation, the appellant herein, filed an action in the district court of Oregon against St. Paul Mercury Indemnity Company, one of the appellees herein, seeking to recover the sum of $28,651.40. The appellant is an Oregon corporation, and the appellees are a Delaware and a Minnesota corporation respectively.[1] The district court had jurisdiction by reason of 28 U.S. C.A. § 1332, and jurisdiction in this court is based upon 28 U.S.C.A. § 1291.
 
 
 2
 Jack Robinson, Contractor, Inc., hereinafter called "contractor", was a road building contractor incorporated under the laws of the State of Oregon. On September 22, 1955, it accepted a contract from the United States Department of Commerce, Bureau of Public Roads. The contract, Road Building Contract No. 89225, was for road construction work and will hereafter be referred to as the "bureau job". The contractor was also awarded a road building contract from the Oregon State Highway Department, contract No. 4648, which will hereinafter be referred to as the "state job". Both road building jobs were in the same general area, but the sites were approximately 19 miles apart. Appellee St. Paul Mercury Indemnity Company wrote the performance bond on both the bureau job and the state job.
 
 
 3
 In September, 1955, after having been awarded the bureau job, the contractor entered into a conditional sales contract with appellant for the purchase of a heavy duty tractor;[2] and in April, 1956, after the award of the state job, the contractor entered into two more conditional sales contracts with appellant for two additional heavy duty tractors.
 
 
 4
 In April, 1956, at the time of the sale of the two tractors, appellant was aware of the award of the state job to the contractor and sold the two tractors for approximately five per cent down. The monthly payments on the contract of September, 1955, were paid by the contractor through November, 1956, but no monthly payments were made upon the conditional sales contracts of April, 1956.
 
 
 5
 During the course of the bureau job the contractor had purchased a considerable number of other pieces of equipment from appellant and had returned others either for credit or on account by way of rescission or cancellation.
 
 
 6
 The contractor became involved in financial difficulties some time during the summer of 1956, and by September both appellant and appellees were aware of these difficulties. In September a representative of the appellees arrived at the place of contractor's operations to investigate and shortly thereafter agreed with the contractor to "advance funds to complete the job." Appellees then prepared and had executed and delivered to them a chattel mortgage on all the assets and equipment of the contractor, all property and assets owned by Jack Robinson individually and by his wife, and all assets owned by Jack Robinson d. b. a. Jack Robinson Equipment Company. This chattel mortgage included the three tractors above mentioned which had been purchased by the contractor from appellant. It was recorded on October 3, 1956, in Umatilla County, Oregon, and recited that it was to secure the payment to appellees from contractor of a $100,000 promissory note.
 
 
 7
 On October 10, 1956, appellees issued two drafts (one in the sum of $7,518.74 and the other in the sum of $7,360.57) each payable to the First National Bank of Portland, for five monthly installments due on the conditional sales contracts of April, 1956. The said bank had at all times held the conditional sales contracts for collection.
 
 
 8
 On October 10, 1956, appellees also issued four drafts, totaling $15,500, each payable to appellant, and delivered them to the contractor for delivery to appellant in payment of equipment rental past accrued.
 
 
 9
 On October 12, 1956, appellees issued two drafts, one in the sum of $1,694.26 and the other in the sum of $1,446.75, and delivered them to the contractor for delivery to appellant for the October 10, 1956, installment on each of the respective conditional sales contracts of April, 1956.
 
 
 10
 On November 13, 1956, appellees issued and delivered to the contractor for delivery to the appellant in payment of the November, 1956, installment of principal and interest on the conditional sales contracts of April, 1956, additional drafts totaling over $1,400. All of the drafts hereinabove mentioned were, within a day or two after the issuance, deposited in appellant's account and honored.
 
 
 11
 On January 22, 1957, a claims adjuster for appellees advised appellant by letter that appellees had "elected to discontinue any further advances or assume any further indebtedness involving the purchase of the three TD 24 Tractors" and notified appellant that appellees proposed to pay the contract balances due on a road grader, a 10-ton roller, and an Essex pump, in the total sum of $5,300.79, and requested that title thereto be issued to St. Paul Mercury Indemnity Company based on the chattel mortgage covering the contractor's interest therein. On March 1, 1957, a draft in the sum of $5,300.79 was issued to appellant designating the last mentioned equipment as the items for which the draft was payment.
 
 
 12
 On February 7, 1957, appellant repossessed all three tractors covered by the conditional sales contracts above mentioned and returned them to its plant in Portland, Oregon.
 
 
 13
 Also contained in the agreed statement of facts was the statement that appellees knew at the time they obtained the chattel mortgage that the contractor was in default under the terms of the conditional sales contracts; that appellant had been demanding payment or return of the equipment; and further that the appellees, after they decided to advance funds to complete the job, furnished money to the contractor to pay the wages of the employees and of Jack Robinson individually at the stipulated rate of $500 per month until the job was shut down for the winter.
 
 
 14
 On April 30, 1957, appellees notified the contractor that they had requested the state to cancel its contract and demanded payment of the $100,000 promissory note secured by the blanket chattel mortgage.
 
 
 15
 Upon this appeal appellant contends that the district court erred in not finding that as a matter of law the appellees assumed the obligation to pay the unpaid balances on the conditional sales contracts and also that the district court erred in failing to find as a conclusion of law that the relationship of master and servant existed between appellees and the contractor by virtue of the appellees leaving the contractor on the job to complete the same.
 
 
 16
 Appellant relies on the case of Corvallis & Alsea River R. Co. v. Portland E. & E. Ry. Co., 1917, 84 Or. 524, 163 P. 1173. In that case the plaintiff railroad had contracted to build a spur line for a lumber company. The plaintiff then sold all of its assets to the defendant (Portland E. & E. Ry.) and assigned to the defendant the contract whereby plaintiff was obligated to construct the spur line. The defendant refused to build the line, and plaintiff was held liable by the lumber company. In the suit by the plaintiff to recover its losses from the defendant, the plaintiff was allowed to recover. The court held that when all of the assets were sold there was an implied assumption of the existing obligation to build the spur line. We do not feel that this case is in any way controlling. There was no question in that case of a principal and surety relationship, and the court dealt with a sale of assets. In the instant case the court found the following facts:
 
 
 17
 1. That Jack Robinson Contractor, Inc. established a line of credit with plaintiffs prior to the purchase of the three tractors (TDEC 879M961, TD 241-8200, and TDE 6659) and plaintiffs relied on said credit in selling the three tractors to Jack Robinson Contractor, Inc.
 
 
 18
 2. That the chattel mortgage between Jack Robinson Contractor, Inc., and defendants was an instrument of security for a loan of $100,000 and did not constitute, or amount to, a sale of assets as listed on Exhibit 4.
 
 
 19
 3. That the relationship between defendants and Jack Robinson Contractor, Inc. was that of principal and surety, and the funds advanced by defendants to Jack Robinson Contractor, Inc. was by virtue of that relationship, with the principal-contractor retaining control and management of the State contract, No. 4648; and the Bureau of Public Roads contract, until the spring of 1957.
 
 
 20
 4. That plaintiff was fully aware of the relationship between Jack Robinson Contractor, Inc. and defendants, prior, and subsequent to, the execution of the chattel mortgage (plaintiff's Exhibit 4) and was not misled by the actions of the defendants in dealing with Jack Robinson Contractor, Inc. regarding the two road contracts.
 
 
 21
 5. Defendants did not agree to assume the unpaid balances of the conditional sales contracts covering the two tractors involved in this lawsuit (TDEC 879M961, and TD 241-8200) either orally or in writing, and did not by implication assume the obligation to pay said contract balances.
 
 
 22
 These findings of fact were supported by sufficient evidence upon the record as a whole.
 
 
 23
 In another case relied upon by appellant, Klein v. J. D. & J. M. Collins et al., 1925, 159 La. 704, 106 So. 120, 122, the court found that the surety undertook to complete the work. It there said:
 
 
 24
 "In that event, the company, by such new undertaking, put itself in the place of the contractors from the moment of the new undertaking, and became liable for the costs of completing the building, without reference to the amount for which it had signed as surety."
 
 
 25
 In the instant case the district court made no such finding. On the contrary, the district judge found, as set out above, that the appellee had not orally, in writing, or by implication, assumed to pay the balances on appellant's contracts with the contractor. He further found that the contractor retained control and management of the two contracts until the spring of 1957.
 
 
 26
 The evidence shows that all advances by appellees were made to the contractor or a bank and by them disbursed. There was no evidence that appellees undertook to complete either contract.
 
 
 27
 Likewise, there was no evidence that the relationship of master and servant ever existed between appellees and the contractor, and the findings of the district court that the relationship that did exist between them was that of principal and surety is amply supported by the evidence.
 
 
 28
 Neither is there any merit to appellant's contention that when the appellees took a chattel mortgage on the contractor's property and advanced to the contractor or the bank the payments of principal and interest on the conditional sales contracts, the appellees became liable to pay the entire balance of the contracts. See, Hulin v. Veatch, 1934, 148 Or. 119, 35 P.2d 253, 94 A.L.R. 1319 and cases cited therein.
 
 
 29
 Finally, appellant contends that the appellees should be estopped from asserting that they did not assume the contractor's conditional sales contracts with appellant and agree to pay the same. Appellant cites no authority for such a claim, nor do we know of any authority that would justify such a holding under the facts of this case.
 
 
 30
 The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The St. Paul Mercury Indemnity Company, a Delaware corporation, is the contractor's surety on its performance bond. However, since the issuance of the bond the St. Paul Fire and Marine Insurance Company, a Minnesota corporation, has assumed all of the assets and liabilities of St. Paul Mercury Indemnity Company, and is now responsible on the bond
 
 
 [2]
 TD 24 International Harvester Crawler type tractor