T.C. Memo. 1999-233


UNITED STATES TAX COURT


PAUL TRANS AND THUY BICH DANG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11873-97.                    Filed July 15, 1999.


Paul Trans and Thuy Bich Dang, pro sese.

<u>G. Michelle Ferreira</u>, for respondent.


MEMORANDUM OPINION


THORNTON, <u>Judge</u>:  Respondent determined the following
deficiencies, additions to tax, and penalties with respect to
petitioners' joint Federal income taxes:[1]

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect during the years at issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

|      |            | Addition to Tax | Penalties |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
|------|------------|-----------------|--------------|
| 1992 | $7,892     | $463            | $1,578       |
| 1993 | 68,182     | ----            | 13,636       |
| 1994 | 70,526     | ----            | 14,105       |

After concessions,[2] the issues for decision are:

(1) Whether petitioners sold their personal residence in Danville, California (the Danville property) in April 1992, resulting in capital gain and disallowance of deductions for mortgage interest accruing after that date;

(2) whether petitioners are entitled to claim losses for tax years 1992 and 1993 with respect to certain rental real property they owned in San Jose, California (the San Jose property);

(3) whether petitioners had legal or equitable ownership of certain real property in Milpitas, California (the Milpitas property) so as to support their claimed deductions for mortgage interest and property taxes with respect to the property for tax year 1994;

---

[2] Respondent disallowed petitioners' unreimbursed employee expense deductions in the amounts of $5,508, $9,119, and $9,158, for 1992, 1993, and 1994, respectively. Respondent also asserted a penalty under sec. 6651(a)(1) for petitioners' failure to timely file their 1992 joint Federal income tax return. Petitioners failed to address these issues both at trial and on brief. We treat petitioners' failure to press these issues as, in effect, conceding them. See Rule 151(e)(4) and (5); Sundstrand Corp. & Subs. v. Commissioner, 96 T.C. 226, 344 (1991); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988); Money v. Commissioner, 89 T.C. 46, 48 (1987). The parties conceded several other issues in the stipulation of settled issues.

(4) whether petitioners are entitled to certain Schedule C deductions for tax year 1994; and

(5) whether petitioners are liable for accuracy-related penalties for negligence pursuant to section 6662(a), for all years at issue.

Some of the facts have been stipulated and are herein incorporated by this reference. When they filed their petition, petitioners were married and resided in Milpitas, California.

For purposes of order and clarity, each of the issues submitted for our consideration is set forth below with separate background and discussion.

## The Danville Property

### Background

On September 29, 1989, petitioners purchased their primary residence on Creekpoint Court in Danville, California. On April 30, 1992, petitioners executed a grant deed dated April 29, 1992, conveying the property to Mamoona P. Haq (Haq) for a purchase price of $400,000. On June 17, 1992, the grant deed was recorded in Contra Costa County, California.

By a document captioned "Deed of Trust with Assignments of Rents", dated May 15, 1992, and signed by Haq on May 18, 1992, Haq assigned to petitioners, for consideration of $24,359.30, all rents, issues and profits with respect to the Danville property. A document captioned "Assignment of Deed of Trust and Request for Special Notice", also dated May 15, 1992, and bearing petitioners' signatures, represents that petitioners were thereby

assigning to ERA Golden Hills Brokers, for value received, all beneficial interest petitioners received from Haq under the deed of trust dated that same day. On January 22, 1993, both the deed of trust and the assignment of the deed of trust were recorded in Contra Costa County, California, at petitioners' request.

Throughout 1992, petitioners made monthly mortgage payments to Prudential Home Mortgage Co. with respect to the Danville property, paying a total of $34,035 of mortgage interest for the year. On August 5, 1992, petitioners filed a Chapter 7 bankruptcy petition. Petitioners maintained the mortgage loan on the Danville property before and after their bankruptcy petition was filed.

On their 1992 joint Federal income tax return, petitioners reported no gain from the sale of the Danville property. They claimed $34,035 in mortgage interest deductions with respect to the property.

Respondent determined that petitioners sold the Danville property to Haq in 1992 and realized taxable capital gain on the sale. Respondent also disallowed $17,000 of petitioners' mortgage interest deduction for tax year 1992 attributable to interest payments made after April 30, 1992.

Discussion

A.  Capital Gain on Sale of the Danville Property

Petitioners argue there was no sale of the Danville property in 1992, and therefore their taxable income for 1992 includes no capital gain on the property.[3]  The burden of proof is on petitioners.  See Rule 142(a).

For Federal tax purposes, a sale of real property is generally considered to occur at the earlier of the transfer of legal title or the practical assumption of the benefits and burdens of ownership.  See Derr v. Commissioner, 77 T.C. 708, 723 (1981); Baird v. Commissioner, 68 T.C. 115, 124 (1977).  Petitioners conveyed legal title to Haq by grant deed dated April 29, 1992, and executed by petitioners April 30, 1992; the grant deed was recorded on June 17, 1992.

Petitioners contend that their signatures on the grant deed, as well as the assignment of deed of trust, were forged.  The only evidence offered in support of petitioners' forgery theory was petitioner husband's testimony, which is unsubstantiated and unconvincing.[4]  We are not required to accept such testimony, and we decline to do so.  See Cluck v. Commissioner, 105 T.C. 324, 338 (1995).  Petitioner wife did not testify.  Petitioners failed

---

[3] Petitioners do not contend that any sale of the Danville property would qualify for nonrecognition treatment under sec. 1034.

[4] While maintaining that he could not recall if he signed the grant deed, petitioner husband conceded at trial that the signature on it "looks like my signature".

to call other witnesses, such as Haq or the notary public who notarized both of the documents in question, or to offer any other evidence to support their forgery theory. This failure gives rise to the inference that the evidence, if produced, would have been unfavorable to petitioners. See id.; see also Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Stokes v. Commissioner, T.C. Memo. 1999-204, and cases cited therein. Accordingly, petitioners have failed to establish that their signatures on the documents in question were not genuine.

Petitioners argue that they could not have sold the property to Haq in April 1992, because they remained liable on the mortgage until foreclosure in 1994. The record does not clearly establish the factual premises of petitioners' argument.[5] Assuming, arguendo, that petitioners' factual premises are correct, they do not compel the conclusion that petitioners would have us draw. A mortgagor may sell the mortgaged property on terms whereby the purchaser takes subject to the mortgage debt but has no personal obligation to pay it. Osborne, Handbook on the Law of Mortgages, sec. 248 (2d ed. 1970). As stated in Stonecrest Corp. v. Commissioner, 24 T.C. 659, 666 (1955):

---

[5] Petitioners introduced into evidence a notice to foreclose, dated June 24, 1994, and a trustee's deed of sale dated Nov. 2, 1994. Neither document, however, specifically describes the property to which these documents pertain, other than by reference to Contra Costa County records that are not in evidence and that are not otherwise explained.

> Taking property subject to a mortgage means that the buyer pays the seller for the latter's redemption interest, i.e., the difference between the amount of the mortgage debt and the total amount for which the property is being sold, but the buyer does not assume a personal obligation to pay the mortgage debt. The buyer agrees that as between him and the seller, the latter has no obligation to satisfy the mortgage debt, and that the debt is to be satisfied out of the property. Although he is not obliged to, the buyer will ordinarily make the payments on the mortgage debt in order to protect his interest in the property.

See also Voight v. Commissioner, 68 T.C. 99 (1977), affd. per curiam 614 F.2d 94 (5th Cir. 1986); Andrews v. Robertson, 170 P. 1129 (Cal. 1918); Wolfert v. Guadagno, 20 P.2d 360 (Cal. Dist. Ct. App. 1933); Osborne, Handbook on the Law of Mortgages, sec. 252 (2d ed. 1970). The facts as established in this record are consistent with petitioners' having transferred the Danville property to Haq subject to petitioners' mortgage on the property.[6]

Petitioners direct us to other irregularities and unexplained circumstances regarding the Danville property, including delays in the recording of the grant deed and of various other documents, and the declaration of a presumptively too-small amount of transfer tax on the grant deed conveying the

---

[6] For instance, included in the record as petitioners' exhibit 55 is a memorandum from Prudential Home Mortgage Co. to a representative of Haq with regard to a mortgage on the Danville property. The memorandum identifies petitioner husband as the mortgagor. The memorandum advises Haq's representative that Prudential Home Mortgage Co. has paid delinquent taxes on the Danville property and seeks, inter alia, reimbursement from Haq's representative in order to release the property from foreclosure. Such a communication to Haq's representative would be consistent with petitioners' having transferred the property to Haq subject to the mortgage.

property to Haq.[7]  Petitioners observe that these irregularities are not satisfactorily explained by evidence in the record.  Such irregularities, however, are peculiarly within petitioners' province to explain, and they have failed to do so.  Accordingly, we hold that petitioners sold the Danville property to Haq in 1992 and must include in taxable income capital gain realized with respect to this sale.

On reply brief, petitioners indicate that, in the event this Court concludes that they sold the Danville property in 1992, their only disagreement with respondent's calculation of the amount of capital gain is with respect to their basis in the Danville property.  They argue that the basis as allowed by respondent should be increased by $641 to reflect amounts expended for concrete for improvements at the Danville property.  On this point, we agree with petitioners.  We find that petitioners have adequately substantiated the $641 cost of concrete, and we hold that this amount is properly includable in the basis of the Danville property for purposes of calculating

---

[7] Petitioners make much of the fact that the grant deed indicates a documentary transfer tax of only $68.20, which they contend would reflect value transferred of $62,000.  We note, however, that the grant deed on its face indicates that the transfer tax was computed on the basis of consideration received less liens or encumbrances at the time of sale.  The evidence shows that the sales price of the Danville property was $400,000, and that petitioners' mortgage on the Danville property, in the principal amount of $338,000, remained in place after the transfer to Haq.  Accordingly, we find no irregularity with this particular circumstance; indeed, it tends to bolster respondent's position.

the capital gain resulting from the April 1992 sale of this property.

B. Mortgage Interest Deductions

Section 163 allows a deduction for certain qualified interest. No deduction is generally allowed for personal interest. See sec. 163(h). As an exception to this rule, a deduction is allowable for certain interest paid with respect of a "qualified residence". See sec. 163(h)(3). For this purpose, "qualified residence" means generally the taxpayer's principal residence and one other dwelling unit that the taxpayer selects and uses for personal purposes for a specified number of days during the taxable year. See secs. 163(h)(4), 280A(d). The determination as to whether any property is a qualified residence is made as of the time the interest is accrued. See sec. 163(h)(3).

We have concluded that petitioners sold the Danville property to Haq in April 1992. There is no evidence in the record that petitioners used the Danville property as a residence after that date. Accordingly, we sustain respondent's disallowance of $17,000 of mortgage interest deductions attributable to the period after April 1992.[8]

---

[8] While it seems questionable that only about half of the total interest payments for 1992 would be attributable to interest payments made during the last two thirds of the year, we note that any error in this regard appears to be in petitioners' favor, and we do not undertake to recompute the amount of respondent's disallowance.

## The San Jose Property

Background

On July 17, 1989, petitioners purchased property located at 2976 Glen Crow Court, San Jose, California.  From February to July 1992, Van Van Nguyen (Nguyen), who was not related to petitioners, resided at the property, but paid no rent. Petitioner husband's brother, Anthony Trans, at times during 1991 and 1992, maintained utility service at the San Jose property. On December 7, 1992, the World Savings Bank foreclosed on the San Jose property.

On Schedule E, Supplemental Income and Loss, of their 1992 joint Federal income tax return, petitioners reported a net loss from the property totaling $112,283, consisting of a "carryforward loss" in the amount of $91,941,[9] depreciation of $13,542, repairs of $4,500, auto and travel expenses of $2,100, and utilities of $200.  Petitioners deducted $16,097 of these amounts in 1992 and carried forward the $96,186 balance to 1993. On their 1993 return, petitioners claimed, in addition to the $96,186 carryforward from 1992, depreciation of $1,693, with

---

[9] On their 1989, 1990, and 1991 joint Federal income tax returns as originally filed, petitioners did not list the San Jose property as a rental property nor attribute any rental income to it.  In 1992, petitioners amended their 1990 and 1991 joint Federal income tax returns to report $2,400 in gross rental income and newly claimed deductions that more than offset the gross income for each year, thereby generating the carryover loss to 1992.

respect to the San Jose property, as well as a $44,872 loss on the disposition of the property.[10]

Respondent disallowed petitioners' 1992 and 1993 Schedule E deductions relating to the San Jose property because of lack of substantiation and on grounds that expenses from the property were limited to rental income because of excessive personal use of the property by petitioners or their relatives. Respondent recharacterized the San Jose property as a capital asset and limited petitioners' allowable loss to $3,000 per year, in accordance with section 1211(b).

Discussion

Deductions are strictly a matter of legislative grace, and taxpayers bear the burden of providing supporting evidence to substantiate claimed deductions. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

The record is devoid of any evidence substantiating the claimed losses and expenses with respect to the San Jose property. In particular, petitioners have failed to substantiate the existence or amount of any net operating loss in any previous

---

[10] Petitioners' Form 4797, Sales of Business Property, attached to their 1993 joint Federal income tax return, states that the San Jose property was sold in February 1992. If, as the parties have stipulated, the bank foreclosed on this property in December 1992, it would appear that the sales date reported on the 1993 return was in error. The record does not clarify when the San Jose property was actually sold.

year, or that it was carried forward to 1992 and 1993 in accordance with the requirements of section 172.[11] Accordingly, petitioners have not established their entitlement to the loss carryforwards from previous years as reflected on their 1992 and 1993 returns. See Larabee v. Commissioner, T.C. Memo. 1989-298. Similarly, petitioners have failed to establish that they incurred the claimed loss of $44,872 from a sale of the San Jose property in 1993. Nor have petitioners presented any evidence that they paid or incurred any expenses with respect to the San Jose property in the years at issue. Accordingly, we sustain respondent's disallowance of the losses claimed with respect to the San Jose property.[12]

---

[11] Under sec. 172, a net operating loss generally may be carried forward only if it is not absorbed through the operation of a 3-year carryback, unless an election is made under sec. 172(b)(3) to waive the carryback. See McGuirl v. Commissioner, T.C. Memo. 1999-21. There is no evidence that petitioners have followed these procedures.

[12] In fact, we question whether the San Jose property was ever rented. There are many irregularities with regard to petitioners' purported rental activity at the San Jose property. For instance, although petitioner husband introduced into evidence an alleged lease agreement to show that petitioners leased the San Jose property to petitioner wife's brother in 1989, petitioner husband conceded at trial that this was not a real "lease" but a fictitious document created for the purpose of qualifying for a mortgage. As mentioned above, petitioners originally omitted any rental activity from the San Jose property on their 1989, 1990, and 1991 tax returns. When they amended their 1990 and 1991 tax returns, they reported gross rental income in the amount of $2,400 for each year. When cross-examined about the peculiarity of these identical round amounts of gross rental income for the 2 years, petitioner husband testified that the amounts reported were probably a "mistake". In addition, on these amended returns, petitioners claimed expenses with respect to the San Jose property that duplicated
(continued...)

In light of this holding, it is unnecessary to consider respondent's argument that the San Jose property was used as petitioners' personal residence during 1992 and therefore gave rise only to nondeductible personal expenses.

## The Milpitas Property

Background

In January 1994, petitioners were interested in purchasing a house that was under construction in a development in Milpitas, California. They participated in a "camp-out" organized by a group of prospective buyers to hold their place in line before the scheduled opening of the builder's sales office on January 29, 1994. On March 11, 1994, petitioners paid a $350 fee to a financing company for an appraisal of the Milpitas home and for a personal credit investigation.

Petitioners previously had declared bankruptcy and could not qualify for a loan. The loan officer suggested petitioners have another person obtain the loan to purchase the property.

---

    [12](...continued)
mortgage interest deductions petitioners had already claimed with respect to this property. As another example, petitioners listed the San Jose property on their chapter 7 bankruptcy petition as a "second home" and listed the nature of the debtor's interest in the property as "brother living in house". The copy of the bankruptcy petition that respondent received from petitioners in response to a discovery request had been altered to remove the words "second home" and "brother living in house". The cumulative weight of these irregularities severely strains petitioners' credibility. In determining whether a taxpayer has adequately substantiated deductions, "The credibility of the taxpayer is a crucial factor." Norgaard v. Commissioner, 939 F.2d 874, 878 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390.

Petitioner wife's brother, Son Dang, agreed to obtain on behalf of petitioners a mortgage in the amount of $323,900 on the Milpitas property.

On August 3, 1994, petitioners paid out of their own funds $137,518.62 as a downpayment on the Milpitas property. Petitioners made the mortgage payments on the Milpitas property. They also chose, approved, and paid for home improvements, such as carpeting. After construction was completed, they lived at the Milpitas property.

Son Dang never lived at the Milpitas property. On December 3, 1994, Son Dang executed a grant deed for the Milpitas property in favor of petitioner husband.

On their 1994 joint Federal income tax return, petitioners deducted $11,738 for mortgage interest and $3,570 for property taxes paid on the Milpitas property. In the notice of deficiency, respondent disallowed the deductions in their entirety on the ground that petitioners did not own the Milpitas property.

## Discussion

### A. Mortgage Interest Deduction

In general, section 163 allows a deduction for interest paid or accrued on certain indebtedness, including acquisition indebtedness on a qualified residence. The acquisition indebtedness generally must be an obligation of the taxpayer and not an obligation of another. See Golder v. Commissioner, 604

F.2d 34, 35 (9th Cir. 1979), affg. T.C. Memo. 1976-150.  However,

the applicable regulations provide in pertinent part:

> Interest paid by the taxpayer on a mortgage upon
> real estate of which he is the legal or equitable
> owner, even though the taxpayer is not directly
> liable upon the bond or note secured by such
> mortgage, may be deducted as interest on his
> indebtedness.  [Sec. 1.163-1(b), Income Tax Regs.]

In a case with analogous facts, Uslu v. Commissioner, T.C.

Memo. 1997-551, the taxpayers could not qualify for a home

mortgage loan because of a recent bankruptcy.  In Uslu, the

taxpayer-husband and his brother agreed that the brother would

obtain the loan for the property and the taxpayers would pay the

mortgage and all other expenses for maintenance and improvements.

This Court held that although the taxpayers did not hold legal

title to the property, they were the equitable owners and were

entitled to deduct mortgage interest paid by them with respect to

the property.

Similarly, in the instant case, although petitioners were

not the legal owners of the Milpitas property before December 3,

1994, they consistently treated the Milpitas property as if they

were the owners, paying the downpayment, mortgage payments, and

property taxes with respect to the property, as well as paying

for improvements to the property.  Based on all the evidence, we

infer that those actions were pursuant to an agreement with Son

Dang, who took title to the property and obtained a mortgage only

as an accommodation to petitioners, who could not qualify for a

loan.  A few months later, Son Dang transferred the title to

petitioner husband.  We conclude that petitioners held the benefits and burdens of ownership of the Milpitas property and have established equitable ownership of it during the period in question during 1994.  Accordingly, we hold that petitioners are entitled to deduct the $11,738 home mortgage interest paid by them with respect to the Milpitas property during 1994.

### B. Property Taxes

Section 164 allows a deduction for certain taxes, including State and local real property taxes.  In general, taxes are deductible only by the person upon whom they are imposed.  See sec. 1.164-1(a), Income Tax Regs.  However, the person owning the equitable or beneficial interest in real property and paying the taxes assessed against the property to protect that interest may deduct the taxes paid even though legal title is recorded in the name of another person.  See Estate of Movius v. Commissioner, 22 T.C. 391 (1954); Horsford v. Commissioner, 2 T.C. 826 (1943); Casey v. Commissioner, T.C. Memo. 1965-282.

We have concluded that petitioners were equitable owners of the Milpitas property during 1994; accordingly, we hold that they are entitled to deduct property taxes they paid on the property that year.

For the first time on reply brief, respondent argues that petitioners have not substantiated that they paid the property taxes on the Milpitas property.  Respondent has failed to raise this issue in the notice of deficiency, at trial, or on opening

posttrial brief. In fact, respondent's opening brief expressly refers to "the property taxes paid by petitioners in 1994, in the amount of $3,570." As a general rule, this Court will not consider issues first asserted on brief. See Sundstrand Corp. & Subs. v. Commissioner, 96 T.C. 226, 346-348 (1991). When issues are presented in the reply brief only, there is even stronger reason to disregard them. See Estate of Snarling v. Commissioner, 60 T.C. 330, 350 (1973), revd. and remanded on other grounds 552 F.2d 1340 (9th Cir. 1977).

## Schedule C Business Loss

### Background

On their 1994 joint Federal income tax return, petitioners reported Schedule C gross receipts of $15,535, and total Schedule C expenses of $80,337, resulting in a net loss on Schedule C of $64,802. Petitioners contend that this net loss was attributable to a trade or business that petitioner husband carried on under the name of Transnet to provide computer consulting services.

Petitioners also reported on their 1994 joint Federal income tax return wage income of $180,326. The substitute Form W-2, Wage and Tax Statement, attached to the tax return attributes $167,265 of this amount to petitioner husband's employment with The Application Group, San Francisco, California.

In the notice of deficiency, respondent disallowed petitioners' claimed Schedule C expenses in the amount of the reported net loss (i.e., $64,802). In effect, then, respondent

has allowed petitioners' claimed Schedule C deductions to the extent of their reported gross receipts from this activity (i.e., $15,535).

Discussion

In general, section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. Whether a taxpayer is carrying on a trade or business requires an examination of all the relevant facts. See <u>Commissioner v. Groetzinger</u>, 480 U.S. 23, 26 (1987). The burden of proof is on petitioners. See Rule 142(a).

The parties agree that these three factors are relevant in determining whether a trade or business exists: (1) whether the taxpayer undertook the activity intending to make a profit; (2) whether the taxpayer was regularly and actively involved in the activity; and (3) whether the taxpayer's business operations have actually commenced. See <u>McManus v. Commissioner</u>, T.C. Memo. 1987-457, affd. per curiam without published opinion 865 F.2d 255 (4th Cir. 1988) and cases cited therein.

The record does not establish that petitioners satisfy any of these factors. First, there is no evidence as to whether petitioners engaged in this purported activity with "the basic and dominant intent" of making a profit. See <u>Hirsch v. Commissioner</u>, 315 F.2d 731, 736 (9th Cir. 1963), affg. T.C. Memo. 1961-256. The determination of a profit objective is based on

all the facts and circumstances, and "more weight must be given to the objective facts than to the taxpayer's mere after-the-fact statements of intent." Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986). There are virtually no objective facts in the record to indicate the requisite intent.

Second, there is no evidence to show that petitioner husband was regularly and actively involved in this activity. The fact that he earned $180,326 in wages in 1994 strongly suggests that he was regularly and actively involved in his employment for The Application Group, rather than for Transnet.

Finally, there is no evidence to support a finding that Transnet had actually commenced business operations when the claimed deductions were incurred. Preopening and startup expenses are not deductible under either section 162 or section 212. See Hardy v. Commissioner, 93 T.C. 684, 687 (1989).

Even if we assume, arguendo, that petitioners were engaged in a trade or business with respect to Transnet in 1994, petitioners have failed to establish that they are entitled to deductions under section 162 in excess of the $15,535 that respondent has already allowed.

Petitioners bear the burden of showing their entitlement to the claimed deductions. See Norgaard v. Commissioner, 939 F.2d 874, 877 (9th Cir. 1991). Taxpayers are required to maintain records sufficient to enable the Commissioner to determine the taxpayer's correct tax liability. See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). Except in the case of

expenses subject to section 274, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it adequately, the Court is permitted to make as close an approximation as possible, bearing heavily on the taxpayer whose inexactitude is of his own making.  See Cohan v. Commissioner, 39 F.2d 540, 543 (2d Cir. 1930).  The estimate, however, must have a credible evidentiary basis.  See Norgaard v. Commissioner, supra at 879; Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

The record in this case provides no credible evidentiary basis to support petitioners' claimed deductions in excess of the $15,535 allowed by respondent.  Although petitioners introduced into evidence copies of numerous checks and receipts, these documents cannot be readily correlated to the deductions petitioners claimed on their Schedule C for tax year 1994.  For example, the documents purport to establish, among other things, that during 1994 Transnet paid $18,150 to Richard Hartman and $3,500 to Son Dang as compensation for computer programming services.  Petitioners' Schedule C for tax year 1994, however, reports no deduction for wages paid, nor did Transnet issue Forms 1099 to Son Dang or Richard Hartman in 1994.[13]

---

[13] The evidence with regard to Richard Hartman is particularly inscrutable.  The documents introduced by petitioners include invoices issued by Advanced Consulting Experts to Intel, listing Richard Hartman as contractor, and bearing notations that expense reimbursements are to be made directly to Hartman.  Nowhere on these invoices is there any mention of Transnet or petitioners.  The copies of the checks to Hartman that petitioners have introduced into evidence do not show that they have been canceled by the bank and appear to have

(continued...)

Moreover, the documents that petitioners have introduced into evidence do not adequately substantiate the claimed expenses. The copies of checks introduced by petitioners generally do not indicate cancellation by the bank and are unaccompanied by invoices to substantiate the purpose of the expenditures. For instance, one check totaling $15,681.23 purports to be for office furniture, but there is no accompanying invoice or other evidence showing a purchase of office furniture, or for that matter, evidence to indicate that Transnet even had an office.

In general, section 274(d) disallows any deduction for certain types of expenses, including travel, entertainment, and automotive expenses, unless the taxpayer substantiates by adequate records or sufficient evidence corroborating the taxpayer's own testimony, the amount, time, place, business purpose, and business relationship.

During the year at issue, petitioners deducted $1,929 as meals and entertainment expenses, and $1,651 for travel expenses. Petitioners have not substantiated these expenses in accordance with the requirements of section 274, and accordingly they must be disallowed. Cf. Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1558 (1987); Mohan Roy, M.D., Inc. v. Commissioner, T.C.

---

[13](...continued)
been altered to remove the preprinted legend bearing the account holder's name and address. Other portions of the exhibit consist simply of Hartman's bank deposit slips and bear no original reference to petitioners or Transnet.

Memo. 1997-562, affd. without published opinion __ F.3d __ (9th

Cir. 1999).[14]  Respondent's determination on this issue is

sustained.

## Accuracy-Related Penalty

Respondent determined that petitioners were liable for

accuracy-related penalties under section 6662(a) for all years in

issue.  Section 6662(a) imposes an accuracy-related penalty equal

to 20 percent of any underpayment that is attributable to

negligence or to a substantial understatement of income tax.

Negligence is the lack of due care or failure to do what a

reasonable and ordinarily prudent person would do under the

circumstances.  See Neely v. Commissioner, 85 T.C. 934, 947

(1985).  It includes the failure to make a reasonable attempt to

comply with the Internal Revenue Code.  See sec. 6662(c).  No

penalty shall be imposed if it is shown that the taxpayer had

reasonable cause and acted in good faith.  See sec. 6664(c).

Petitioners exhibited a lack of due care for each of the

years in issue.  With respect to their 1992 tax year, petitioners

failed to report capital gains from the sale of the Danville

---

[14] Petitioners introduced into evidence numerous receipts for various meals and entertainment expenses at issue, including receipts for a seafood dinner and bakery items.  Many of these receipts bear cryptic handwritten legends of business purpose and participants that clearly have been added to the copies, in identical handwriting and pen font, after the fact.  Many more receipts, such as a great many gas station receipts, bear no indication of business purpose.  Petitioners have offered no particularized corroborating testimony about any of these claimed expenses.

property and deducted mortgage interest attributable to the period after they sold the property to Haq. With respect to their 1992 and 1993 tax years, petitioners claimed substantial losses with regard to the San Jose property without substantiation. With respect to their 1994 tax year, petitioners claimed substantial Schedule C losses without establishing that they were engaged in a trade or business, and without adequate substantiation for the expenses claimed.

On brief, petitioners argue that they are not liable for the negligence penalty because they properly relied in good faith on a paid income tax preparer, providing her with all relevant tax return information for the tax years in issue. Reliance on the advice of a professional tax adviser does not necessarily demonstrate reasonable cause and good faith. See sec. 1.6664-4(b)(1), Income Tax Regs. All facts and circumstances must be taken into account. See sec. 1.6664-4(c)(1), Income Tax Regs. Reliance may not be reasonable or in good faith if the taxpayer knew or should have known that the adviser lacked knowledge in the relevant aspects of Federal tax law. See id. The advice must be based upon all pertinent facts and the applicable law; these requirements are not met if the taxpayer fails to disclose facts that the taxpayer knows, or should know, are relevant to the proper tax treatment of an item. See sec. 1.6664-4(c)(1)(i), Income Tax Regs. The advice must not be based on unreasonable factual or legal assumptions. See sec. 1.6664-4(c)(1)(ii), Income Tax Regs.

Apart from passing references in petitioner husband's testimony to his tax preparer, the record is devoid of evidence to support petitioners' contentions. Petitioners did not call their tax preparer as a witness. There is no evidence to support a determination that petitioners acted reasonably or in good faith in relying on their tax preparer's advice, or indeed any evidence as to what qualifications their tax preparer might have had. There is no evidence that petitioners disclosed to their tax preparer all relevant facts and circumstances, or that the advice was based on reasonable factual or legal assumptions.

Accordingly, we sustain the imposition of the accuracy-related penalty under section 6662(a) for all years in issue.

To reflect concessions and the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.